Wadleigh *v.* Janvrin.

*Motion denied.*

## WADLEIGH *v.* JANVRIN.

Many articles, really chattels in themselves, are by construction or destination, so annexed to the freehold as to be properly regarded as fixtures, or part and parcel of the realty.

Whatever has become thus annexed to the realty, though temporarily separated therefrom for convenience in making repairs, or otherwise, still remains a part, and passes by a conveyance thereof, notwithstanding the severance. ·

The secret, inchoate, unexecuted intention of the owner of the freehold to substitute. for the dissevered portions of a building, others of a different construction, cannot change the character and convert into chattels personal what would otherwise be clearly and unequivocally a part of the realty; and, as against the grantee, evidence of such secret, inchoate, unexecuted intention of the grantor, is inadmissible to control the facts and circumstances determined by the law itself, which, at the time of the conveyance, gave to movable objects an immovable character.

Trespass *de bonis asportatis* may be maintained for taking and carrying away fixtures, or the portions of a building temporarily dissevered therefrom.

TRESPASS, by Jonathan B. Wadleigh against George Janvrin, for taking and carrying away a cider mill and press, two stanchion timbers, eighteen hinge staples, thirty tie chains, and twenty tie-up planks, alleged to have been taken from the plaintiff, and carried away by the defendant, in September, October, and November, 1857.

It appeared in evidence that August 26th, 1857, the plaintiff purchased of the defendant a farm in Stratham, in this county, consisting of two hundred and seventy-five acres of land, with the buildings and a large orchard thereon, and the crops and hay in the barns, for $14,500. A bond for the conveyance was given upon that day, and the plaintiff took immediate possession; but the deed was not executed until September 17, 1857. In the bond, the defendant reserved from the contract for conveyance one joint of hay, and all the hewn and round timber and plank lying about the house. The deed, executed September 17, 1857, conveyed to the plaintiff all the land, describing it, with the buildings thereon, &c. A bill of sale, of the same date, conveyed to the plaintiff all the oats and hay in the barns, except one joint of hay, specified, for $450. On the same day the plaintiff gave to the defendant a written agreement that he might have until November 1, 1857, to remove certain wood lying in the pasture, and all other personal property of his upon the farm.

When the plaintiff purchased and took possession of the farm, there was upon it a cider house, partly floored over, containing the mill and press in controversy, which had been used in it for twenty-one years. The press stood upon cross sills, lying upon bed sills, resting upon flat stones imbedded in the ground, and the press sills were halved and fastened into the bed sills by keys; the screw-beam was large, with wooden screws, supported by upright posts some twelve feet in length, to which it was joined by tenons and pins, and it was fastened to the press sills by iron bands passing over each end of it, and keyed into

those sills. From one of these uprights a brace extended to the frame of the building, one end of the brace being nailed to the upright and the other to the frame. The press and its appurtenances could not be removed from the building without being taken down, and its various portions separated from each other. The defendant was accustomed to take up the trough and take down the sweep and cast iron nuts, and other portions of the grinding part of the mill, in the summer season, for the purpose of preventing the trough from rotting, and to obtain space where they stood for storage; and at the time of the purchase by the plaintiff, this portion of the mill was lying about the cider house in detached portions. When in use, the trough rested upon timbers lying upon the ground, and the timbers to which the sweep was attached were supported by upright timbers, at the side of the trough, braced to the trough itself. A path worn in the ground marked the track of the horse employed to grind the apples, and one post of the building was worn pretty deep where the whiffletree had hit it, as the horse passed round. The tub into which the cider flowed from the press was partly sunk into the ground.

When the plaintiff purchased the farm, one of the barns thereon had been for some time in process of repair. It had been raised some fifteen inches, the posts extended by being spliced, and new sills and sleepers put in to make these repairs; and in order to make these repairs, the floors of the tie-ups, with the stanchions and stanchion timbers and tie-chains had been removed and only partially replaced, at the time of the conveyance. The doors and windows and hinge hooks by which they had been supported had also been removed. In one tie-up most or all the floor had been relaid, partly with new plank, and one stanchion timber replaced. In the other tie-up, the rough floor running lengthwise had been relaid, partly with new plank, leaving only the short plank under the

cattle to be replaced. There was some evidence that portions of the stanchion timbers had been cut off for blocking in raising the barn; but two pieces of these timbers, some twelve or fifteen feet in length and six or eight inches square, were taken by the defendant and removed to Exeter, and used in his barn there. Some of the short tie-up plank, that had been removed from the stalls, were considerably worn, and the defendant left one or two piles of these for the plaintiff, at his request; but the evidence was clear and explicit that the defendant removed to Exeter some thirty or forty of the plank which had previously constituted part of the floors of the tie-ups. Some of the hinge hooks were rusted off before they were taken out, and others were broken in being removed.

Some time after the plaintiff purchased and took possession of the farm, the defendant came, took down the cider-mill press and removed the same, together with the entire mill, and converted it to his own use. He also took and carried away a portion of the tie-up planks and the two pieces of stanchion timbers, as before stated, the hinge hooks on which the doors and windows of the barn had hung, and part of the chains used to tie the cattle to the stanchions, which chains were fastened to the stanchions by rings around them, and could only be removed by taking the stanchions from the timbers.

The defendant proposed to show that before the contract for the sale of the farm to the plaintiff, he had formed the intention to put in slide doors and windows to the barn, and slide stanchions for the cattle, so as to dispense with the hooks and stanchion timbers and tie-chains which he carried away, and had got out part of the timber and other materials to carry out this intention, all of which he carried away with him; but the court excluded the testimony, and the defendant excepted.

There was conflicting and contradictory testimony in relation to the cider-mill,—the plaintiff testifying that the

defendant pointed it out as an inducement to the trade when showing the farm, and that he understood it, from the defendant's representation, to be a part of the farm and buildings; while the defendant denied this, and testified that he offered to sell the plaintiff the cider-mill, and the plaintiff said he did not want it, that it was worthless, and he was going to get one every way superior to it—all which the plaintiff denied.

The defendant objected that, upon the evidence, all the articles sued for were personal property, and did not pass to the plaintiff by the conveyance of the farm and buildings; and further, that if the property sued for had passed by the conveyance as part of the real estate, or affixed thereto, the present action could not be maintained, but only trespass *quare clausum.* The court overruled the objection, and the defendant excepted.

The jury having returned a verdict for the plaintiff for the value of the property taken and carried away from the farm by the defendant, under the ruling of the court that it had passed to the plaintiff by the conveyance of the farm and buildings to him, as part thereof or affixed thereto, the defendant moved that the same be set aside and a new trial granted, by reason of supposed errors in the rulings of the court.

*Wilcox* (with whom was *Christie*), for the defendant.

1. A cider-mill is not, *ex necessitate*, a fixture, but the question depends upon the circumstances of each particular case. There must be actual annexation to the freehold— *Despatch Line* v. *Belamy*, 12 N. H. 205; and this there was not in this case, for the whole mill could have been taken down and removed without disturbing the ground on which it stood, and without the slightest injury to any part of the freehold; and the facts and circumstances stated in the case, as drawn, are not such as would warrant the court in ruling, as a matter of law, that any of the articles

claimed in this suit were fixtures. *Hermann* v. *Vernon*, 6 Johns. 5; *Bradley* v. *Osterhart*, 13 Johns. 404; *Cresson* v. *Stout*, 17 Johns. 116; *Holmes* v. *Tremper*, 20 Johns. 29; *Lawton* v. *Lawton*, 3 Atk. 13; *Lawton* v. *Salmon*, 1 H. Bl. 259; *Dean* v. *Allalley*, 3 Esp. 11; Bull. N. S. 34. But the case finds that there was conflicting evidence as to the cider-mill, and we say this should have been submitted to the jury. It was evidence bearing directly upon the main question, and showed how the parties treated it at the time of the sale. The court might well enough have told the jury, as a matter of law, what constituted an annexation to the freehold, but they had no right to assume to pass upon the facts in controversy in this case.

2. We take it to be clear that fixtures may be divested of the character of real estate, and reinvested with that of personal chattels, by a severance by the owner, or with his assent and authority; and this depends upon the question whether the severance, when made, is intended to be permanent, or only temporary, and with a view of being replaced. 2 Smith L. C. (4th Ed.) 219. It is admitted that the stanchion pieces, tie-chains, hinge staples, and tie-up planks had been severed from the freehold by the defendant while he was the owner of the premises, and long before the sale to the plaintiff,—and the whole question then turns upon the point whether that severance was temporary or permanent; and we submit, in the first place, that they being shown to have been severed, the burden of proof was upon the plaintiff to show that they still retained the character of fixtures at the time of his purchase. But whether the burden of proof was upon the one side or the other, here was a question of fact to be tried, and the jury were the only tribunal competent to pass upon it; and it was in this view of the case that the evidence was offered as to the plan and intentions of the defendant in repairing the barn, and the extent of those same repairs; and we submit that this was clearly competent. But be-

yond all this, we submit that the case shows sufficient for the court, if they were to pass upon the facts, to find that the stanchion pieces, hinge staples, plank, &c., so far as they had not been replaced, were never intended to be replaced, but the severance was complete and permanent, and they thereby were divested of the character of fixtures, which they had held, and reinvested with that of personal estate. The stanchion pieces had been cut up, and a portion of them used for other purposes; these therefore could not be replaced in their former position. Many of the hinge staples were broken and useless, a portion of the plank had been relaid, and the remainder so "worn and rotten" that they were not fit to be replaced, and no man in his senses would have thought of it. A large part of the floor had been relaid with new planks; and to that part of the old plank the place of which had been supplied with new, the plaintiff certainly could have no claim, because the severance here was clearly complete and permanent, and they had been reinvested with the character of personals, and the defendant had the right to remove them as he did.

3. But if the ruling of the court was correct, then all these things were a part of the realty, and the plaintiff's only remedy was upon his bond for a conveyance, or in an action of trespass *quare clausum.*

*C. H. Bell,* for the plaintiff.

1. Between grantor and grantee, the strict rule of the common law prevails, and the grantee holds all fixtures, whether for the purpose of manufacture, agriculture, or otherwise. *Conner* v. *Coffin,* 22 N. H. 542.

The cider-mill had all the properties required to constitute a fixture. (1) It was ponderous and bulky—constructed in great part of iron—requiring machinery to lower it to the ground, and had to be taken to pieces before it could be removed from the building. (2) Its sills were

Wadleigh v. Janvrin.

upon stone foundations, and a part of the apparatus of the mill was sunken in the ground. It was actually annexed to the building by a brace, the nails of which had to be drawn before the mill could be removed. (3) It was adapted to its position—upon a farm where a large orchard rendered it indispensable, and where it had been used twenty years—placed in a building constructed for it, and receiving designation from it. It is submitted that it thus answered all the requirements necessary to a fixture. As to these facts there was no conflicting testimony. *Despatch Line* v. *Belamy*, 12 N. H. 205; *Lathrop* v. *Baker*, 23 N. H. 46; *Tuttle* v. *Robinson*, 33 N. H. 104. The *nisi prius* ruling mentioned in *Lawton* v. *Lawton*, 3 Atk. 13, 16, has been doubted, and probably was in reference to a machine entirely different from this. The decision in *Holmes* v. *Tremper*, 20 Johns. 29, was between lessor and lessee, where a different rule obtains. The case of *Bradlay* v. *Osterhart*, 13 Johns. 404, gives the rule on the subject. There are all varieties and situations of cider-mills, and the question, as to each, must be decided on its own circumstances.

2. Any part of real estate which has been detached from its place, continues to be parcel of the realty, and would pass by a conveyance thereof, as a stone from a grist-mill, doors, windows, keys, &c. This is believed to be elementary. *Liford's Case*, 11 Coke 50. Would the intention of the grantor, in detaching such an article, to supply its place with some thing else, change its character as against a grantee who might have different views? The intention, in order to work such a change in the property, must be consummated by the act of replacing the article attached by another. This objection comes with an ill grace from the defendant, who not only carried off the old things he had displaced, but the new materials to put in their stead. If the plaintiff had been left either, he would have been satisfied. We think it clear the evidence was inadmissible.

3. The present form of action may be maintained. *Dalton* v. *Whittem*, 3 A. &. E. (N. S.) 961; *Nelson* v. *Burt*, 15 Mass. 204; *Sawyer* v. *Twiss*, 26 N. H. 348; *Wood* y. *Banks*, 14 N. H. 101; *Lyford* v. *Putnam*, 35 N. H. 363; *Clarke* v. *Holford*, 2 Carr. & Kir. 540; 7 Cow. 95.

FOWLER, J. The old and general rule of the law seems to have been, that whatever was annexed to the freehold became part of it, and could not be taken from it; understanding by the expression "annexed to the freehold," fastened to or connected with it; so that mere juxtaposition, or the laying of an object, however heavy, on the freehold, did not amount to annexation. *Culling* v. *Tufnal*, Buller's Nisi Prius 34; *Anthony* v. *Haneys & Harding*, 8 Bing. 186; *Horn* v. *Baker*, 9 East 215; *Davis* v. *Jones*, 2 B. & A. 165.

But there were early recognized cases of constructive annexation, in which an object, really a chattel, was for certain purposes considered as annexed to the freehold. Thus in *Liford's Case*, 11 Coke 50, it is said to have been resolved, in 14 H. 8, 25 b, in *Wiston's Case of Gray's Inn*, that if a man has a horse-mill; and the miller take the millstone out of the mill, to the intent to pick it to grind the better, although it is actually severed from the mill, yet it remains parcel of the mill, as if it had been always lying upon the other stone, and, by consequence, by the lease or conveyance of the mill, it shall pass with it; so of doors, windows, rings, &c. The same law of keys; although they are distinct things, yet they shall pass with the house. Such, too, were heir-looms, charters and evidences attendant upon the inheritance, and the deer and fish in a man's park or fish-pond. 11 Vin. Ab. Ex'rs, Z, 166, 177; 1 Ld. Raym. 728; *Pascy* v. *Pasey*, 1 Vern. 273; *Lord* v. *Wardle*, 3 Bing. N. C. 680; *Liford's Case*, 11 Coke 50; Shep. Touch. 470; *Wiltshear* v. *Cottrell*, 18 E. L. & E. 142; *Lawton* v. *Lawton*, 3 Atk. 13, and notes; *Walker* v. *Sherman*, 20 Wend. 636, where the authorities are collected and the

whole subject fully discussed by Mr. Justice *Cowen;* Amos & Ferrard on Fixtures; Gibbons on Fixtures; 2 Kent Com. (3d Ed.) 345; *Elwes* v. *Mawe,* 3 East 38; 2 Smith L. C. 99, and notes.

In *Regina* v. *Wheeler,* 6 Mod. 187, upon a motion to stay process for seizing the wheel of a mill as a deodand because it was parcel of the freehold, Lord Chief Justice *Holt* is reported as saying, "A mill is a known thing in law, and so are the parts thereof; and therefore, if the owner of a mill take out one of the mill-stones to pick or gravel it, and devise the mill while the stone is severed from it, yet it shall pass as part of the mill." On this ground process was stayed.

These authorities are quite conclusive, that the tie-up planks, stanchion timbers, hinge staples, and tie-chains, which must manifestly have been removed by the defendant for convenience in repairing the barn, passed, by the conveyance of the farm and buildings, to the plaintiff, notwithstanding the severance, unless the unexecuted intention of the defendant, to substitute for them doors, windows, and stanchions of a different character and construction, could affect the result; and we are entirely satisfied that his secret, unexecuted intention in that respect could have no legitimate bearing upon the question. It was entirely immaterial what purpose the defendant had formed, so long as he had not carried it out. By the conveyance, the barn passed to the plaintiff just as it then was, with the portions, afterward carried off by the defendant, dissevered from the rest. The plaintiff saw the barn in the process of repair; he had a right to infer, and to act upon the inference, that the dissevered portions constituted an integral portion of the edifice. \Beside, the destination which gives to movable objects an immovable character, results from facts and circumstances determined by the law itself, and can neither be established nor taken away by the secret, unexecuted purpose or intention of the owner. /

*Hornelle* v. *Enregistr*, 2 Ledru Rollin, Journal de Palais, Repertoire, &c., 214, cited in *Snedecker* v. *Warring*, 2 Kern. 170, where the New-York Court of Appeals held, reversing the decision of the Supreme Court, that a statue, erected as an ornament to grounds, may be a part of the realty, although not fastened to the base on which it rests, and capable of being removed without fracture; and also, that a sun-dial, erected, without being in any way fastened thereto, upon a permanent foundation of stone in the same grounds, was a part of the real estate, although it weighed only two hundred pounds, and could readily be removed. In the same case, moreover, the court disregarded as incompetent and immaterial the testimony of the former owner of the statue, that, when he set it up, he did not design it as a permanent erection, but intended to sell it whenever an opportunity should offer.

Both upon reason, because the severance of a fixture while in process of repair cannot vary its nature or deprive it of the character which annexation has conferred upon it, and upon authority, therefore, we think the testimony of the defendant as to his inchoate intention, unaccompanying the act of severance, to substitute different fixtures to the barn in place of those removed by him for convenience in making repairs, was properly rejected; and that the tie-up planks, stanchion timbers, tie-chains, and hinge hooks were clearly and unequivocally, by destination, part and parcel of the realty, and, as such, passed by the conveyance of the land to the plaintiff, although they were, at the time and under the circumstances found by the case, entirely dissevered therefrom.

Nor can we doubt that the cider-mill was also part of the real estate, and passed by the conveyance of the farm and buildings to the plaintiff. The conflicting evidence upon the trial as to conversations in relation to it, alleged by one party to have occurred, and denied by the other, was clearly incompetent on the legal question as to whether

or not it was part of the realty, and passed with it under the conveyance of the farm. All preliminary negotiations in relation to the property were merged in the written contract of conveyance, and the only question was, whether, as matter of law, the cider-mill, as it was situated at the date of the execution of the deed, passed under it. The understanding of either, or both parties, could not affect this legal question; at most, it would only be their opinion upon it. Beside, it does not appear that any intimation was made at the trial of any desire that this evidence should be submitted to the jury.

We know the strict rule of the ancient law has been much relaxed in favor of trade and manufactures and to encourage industry, as between landlord and tenant, and tenant for life and the remainder-man; so that, as between landlord and tenant, the latter may take away, during the term, all such chimney-pieces, wainscot, machinery, and implements of trade, such as brewing vessels, coppers, fire-engines, cider-mills, &c., as he has himself put up or erected; and the tenant for life may remove fire-engines, cider-mills, coppers, &c., which he has erected, and by which he not only enjoys the profits of the estate, but carries on a species of trade. But, as we understand the matter, the old rule, that whatever is fixed to the freehold becomes part of it and cannot be taken from it, still holds as between the heir and executor, the mortgagee and mortgagor, and the grantee and grantor. Co. Litt. 53, a; Broke, Waste, 104, 143; *Cooke's Case*, Moore 177; *Herlakenden's Case*, 4 Coke 64, a; *Day* v. *Bisbitch*, Cro. Eliz. 374; *Cave* v. *Cave*, 2 Vern. 508; *Culling* v. *Tufnal*, Bul. N. P. 34; *Poole's Case*, 1 Salk. 368; *Ex parte Quincy*, 1 Atk. 477; *Dudley* v. *Ward*, Amb. 113; *Lawton* v. *Salmon*, cited in note to *Lawton* v. *Lawton*, 3 Atk. 13, and in note to *Fitzherbert* v. *Shaw*, 1 H. Bl. 259; *Elwes* v. *Mawe*, 3 East 38; *Penton* v. *Robart*, 2 East 88.

We are aware that in *Lawton* v. *Lawton*, 3 Atk. 13, a

case is cited by the counsel as having been decided by Lord Chief Baron *Comyns*, at the assizes at Worcester, where it was holden that a cider-mill, which was let very deep into the ground and so fixed to the freehold, was personal estate, and belonged to the executor instead of the heir; and Lord *Hardwicke*, in announcing his opinion, recognizes Lord Chief Baron *Comyns* as a very able lawyer. But Lord *Mansfield*, in *Lawton* v. *Salmon*, as reported in note to 3 Atk. 17, says that case most probably turned upon a custom, and, as reported in 1 H. Bl. 259, speaks of it doubtingly, as standing alone and not printed at large. In *Elwes* v. *Mawe*, 3 East 38; 2 Smith L. C. 111, Lord Chief Justice *Ellenborough*, after speaking of *Lawton* v. *Lawton*, 3 Atk. 13, which was the case of a fire-engine erected by a tenant for life to work a colliery, *Dudley* v. *Ward*, Amb. 113, which was of exactly the same character, and *Lawton* v. *Salmon*, 1 H. Bl. 259, as having been decided mainly upon the ground that where the fixed instrument, engine, or utensil, or the building covering the same, was an accessory to a matter of a personal nature, it should itself be considered personal, says, "Upon the same principle, Lord Chief Baron *Comyns* may be considered as having decided the case of the cider-mill; that is, as a mixed case between enjoying the profits of the land and carrying on a species of trade, and as considering the cider-mill as properly an accessory to the trade of making cider."

But, on whatever grounds the decision referred to may have been made, it does not appear to have been followed by any modern case; and the circumstances disclosed on trial, in relation to the cider-mill in controversy, seem to leave no reasonable doubt that it was essentially a fixture and passed with the land. The press was actually attached to the building in which it stood by a brace, and rested upon a foundation of stone embedded in the earth. It was heavy and bulky, and could only be removed by being taken down and its various parts dissevered. It had been

used in the building erected to contain it for twenty-one years, and had evidently been constructed with a view to the permanent enjoyment by the owner of the large orchard upon the farm. The cider-mill house was a mere incident or accessory to the cider-mill contained in it. Admitting that the mill might be removed without actual or physical injury to itself or the building, still the cider-mill was necessary and essential to the particular use to which the building was appropriated, and must therefore be regarded as a fixture in it. There was a manifest and necessary dependence and adaptation between the building itself, and the cider-mill and press contained in it; and some well considered adjudged cases have holden that the true test of a fixture is to be found in the relation it bears to the uses of the freehold.

Thus, it was decided in *Voorhis* v. *Freeman*, 2 W. & Serg. 114, that rolls which formed part of the machinery of a mill were to be regarded as fixtures, although detached at the time when the question arose, and kept on hand for the purpose of replacing others which were actually in use. In *Pyle* v. *Pennock*, 2 W. & Serg. 391, this doctrine was fully carried out and applied, by deciding that plates of iron, which had been placed on the floor of a rolling-mill to protect it against fire, were a part of the building, although not fastened to it in any way, and kept in place only by their own weight. So, too, in *Winslow* v. *The Merchants' Ins. Co.*, 4 Met. 306, where the question was, whether a steam engine and other machinery of a manufactory were to be considered as fixtures, and had vested as such in the defendants under a mortgage of the building prior to the period when they were erected, in opposition to the claim of the plaintiffs under a subsequent specific mortgage of the machinery itself, the court held that this point was to be determined, not by the fact whether or not the machinery was affixed to the building, but on whether it was permanent in its character, and es-

Wadleigh *v.* Janvrin.

sential to the purposes for which the building was occupied. "The rule," says *Shaw*, C. J., "that objects must be actually and firmly affixed to the freehold to become realty, or otherwise be considered as personalty, is far from constituting a criterion. Doors, window-blinds, and shutters, capable of being removed without the slightest damage to a house, and even though, at the time of a conveyance, an attachment, or a mortgage, actually detached, would be deemed, we suppose, a part of the house, and pass with it. And so, we presume, mirrors, wardrobes, and other heavy articles of furniture, though fastened to the walls by screws with considerable firmness, must be regarded as chattels. * * * In general terms, we think it may be said that when a building is erected as a mill, and the water works or steam works, which are relied on to move the mill, are erected at the same time, and the works to be driven by it are essential parts of the mill, adapted to be used in it and with it, though not, at the time of the conveyance, attachment, or mortgage, attached to the mill, they are yet parts of it and pass with it, by the conveyance, mortgage, or attachment." The doctrines of this case, as thus expressed, seem strictly applicable to the cider-mill in controversy, and the building erected to contain it; particularly to the grinding portion of the mill, with its trough and sweep, as it lay about the building at the time of the conveyance to the plaintiff.

The principle we have endeavored to sustain was fully carried out and illustrated in *Snedecker* v. *Warring*, 2 Kern. 170, before cited, where the Court of Appeals held that the question whether or not the statue and sun-dial were fixtures and passed with the land, depended, not upon whether they were affixed or fastened to it, but upon their evident purpose and adaptation for ornament or use in the situation and manner in which they were located and constructed. Says *Parker*, J., in delivering the opinion of the court, "A thing may be as firmly affixed to the land by

gravitation, as by clamps or cement. Its character may depend much upon the object of its erection. Its destination, the intention of the person making the erection, often exercise a controlling influence, and its connection with the land is looked at principally for the purpose of ascertaining whether that intent was that the thing in question should retain its original chattel character, or whether it was designed to make it a permanent accession to the lands." Tried by this test, there can be no doubt that the defendant, when he procured the cider-mill and erected the house over it, or erected the cider-house and subsequently placed the mill within it, intended to make it a permanent accession to the lands; for it had remained in the same position for twenty-one years, at the date of the conveyance to the plaintiff.

*Pothier* says, that where, in the construction of a large vestibule or hall, niches are made, the statues attached to those niches make part of the house, for they are placed there *ad integrandam domum*—they serve to complete that part of the house. Indeed, the niches being made only to receive the statues, there will fail to be any thing in the vestibule without the statues. Pothier de Communautè, sec. 56.

So, by the French law, statues placed in a niche made expressly to receive them, though they could be removed without fracture or deterioration, are immovable, or part of the realty; while those standing on pedestals, in houses, court-yards, and gardens, retain their character of movable or personal, unless placed on a substantial or permanent base made expressly for them, in which case they are governed by the same rule as where placed in niches made expressly to receive them; and the general rule is laid down, that the law will regard such ornaments as mirrors, pictures, and statues, as immovable, when they cannot be taken away without fracture or deterioration, or leaving a gap or vacancy. A statue is regarded as integral with the

permanent base on which it rests, and which was erected expressly for it, when the removal of the statue will offend the eye by presenting before it a distasteful gap—a foundation and base no longer appropriate or useful. Things immovable by destination are those objects, movable in their nature, which, without being actually held to the ground, are destined to remain there perpetually attached, for use, improvement, or ornament. Code Napoleon, Touillier, Ledru Rollin, and other authorities cited in *Snedecker* v. *Warring*, 2 Kern. 176, 177.

Manure in heaps, or about the barn, is deemed a fixture, by the same rule of destination. So with fences, and materials for fence, though not actually in use for that purpose at the time of the conveyance. *Lassell* v. *Reed*, 6 Gr. 222; *Daniels* v. *Pond*, 21 Pick. 327; *Middlebrook* v. *Corwin*, 15 Wend. 169; *Kittredge* v. *Woods*, 3 N. H. 503; *Parsons* v. *Camp*, 11 Conn. 525; *Conner* v. *Coffin*, 22 N. H. 542; *Ripley* v. *Paige*, 12 Vt. 353; *Walker* v. *Sherman*, 20 Wend. 639; *Goodrich* v. *Jones*, 2 Hill 142; *Sawyer* v. *Twiss*, 26 N. H. 346; *Farrar* v. *Stackpole*, 6 Gr. 157; *Fuller* v. *Walter*, 28 Me. 545, and authorities collected in notes of *Hare* and *Wallace* to *Elwes* v. *Mawe*, 2 Smith L. C. 121, (4th Am. Ed.) 215–221.

Aside from the facts shown in the case indicating an actual affixing of the cider-mill to the freehold, it seems quite clear, upon the authorities, that, if it had been in no way affixed to the freehold, when taken in connection with the building that contained it, it must have been deemed a fixture by destination and appropriation for twenty-one years—as designed for permanent use where it was located —as essential to the purpose for which the cider-house was designed—and as leaving a useless and repulsive looking vacant building, if removed therefrom.

Having arrived at the conclusion that the court below were correct in ruling, upon the trial, that all the property sued for was or had been so affixed to the freehold by des-

Wadleigh *v.* Janvrin.

tination, or otherwise, as to pass by the conveyance of the farm to the plaintiff, it only remains to determine whether or not the plaintiff has mistaken his remedy; in other words, whether or not the action of trespass *de bonis asportatis* can be maintained.

As to this, there seems no room for doubt. When the defendant removed the cider-mill and other articles from the farm, they were, by his wrongful act, converted from chattels real, or fixtures, into chattels personal, but the title and ownership still remained in the plaintiff; and for their subsequent appropriation and conversion, the defendant was liable, either in trespass or in trover. The plaintiff might, it is true, have made the wrongful entry of the defendant the gist of his action, and have brought trespass *quare clausum*, unless the agreement authorizing the defendant to enter and remove his personal property until the first of November might have prevented it; but he had a right to qualify the tort by waiving the wrongful entry, and rely only upon the wrongful taking and carrying away. He might have still further waived the wrongful taking and carrying away, and have sued in trover for the conversion alone; since, where the whole merits of a case are discussed and determined in one action, the judgment may be pleaded and shown in evidence in bar to another. It is not for the defendant to complain that the plaintiff has waived some portion of his legal rights. He is certainly in no worse condition than if they had been insisted upon. Trover and trespass are generally concurrent remedies for the unlawful taking and conversion of personal property. *Pitts* v. *Gaines & Foresight*, 1 Salk. 10; *Bishop* v. *Montague*, Cro. Eliz. 824; *Shipwick* v. *Blanchard*, Cro. Jac. 50; *Cooper* v. *Chitty*, 1 Burr. 31; *Wallace* v. *King*, 1 H. Bl. 13; *Lacon* v. *Barnard*, Cro. Car. 35; *Ferrers* v. *Ardens*, Cro. Eliz. 668; *Lechmere* v. *Toplady*, 2 Ventris 169; *Walker* v. *Sherman*, 20 Wend. 639; *Goodrich* v. *Jones*, 2 Hill 142; *Farrant* v. *Thompson*, 5 B. & A. 826; 7 E. C. L. 272; *Woodruff* v.

*Halsey,* 8 Pick. 333 ; *Lyford* v. *Putnam,* 35 N. H. 563 ; *Nelson* v. *Burke,* 15 Mass. 204 ; *Woods* v. *Banks,* 14 N. H. 101.

In accordance with these views, there must be judgment upon the verdict.

*Exceptions overruled.*