## LANGDON v. BUCHANAN.

As between the mortgagee of a mill and the mortgagor, or attaching creditors of the mortgagor, a machine becomes a fixture when it is annexed to the freehold, and is adapted to the purposes for which it is used. The mode of annexation is not the controlling test. Much depends on the

nature of the machine, and of its use as connected with the use of the freehold. It may be sufficient if it is held in position by its own weight. Whether justice requires that a party be. allowed to amend his pleadings is a question of fact to be determined at the trial term.

TRESPASS, *qu. cl.,* and a second count in trespass *de bonis.* Facts found by a referee. August 8, 1879, the plaintiff conveyed to George C. Cox a tract of land, with the building thereon, used as a grist-mill. In it were a portable grist-mill, steam engine, and boiler. Besides the main shafting, there was a counter-shaft, suspended and held in place by hangers, and on the counter-shaft were seven iron pulleys, over which passed belts connecting with the machinery, of the value of $75. There was a rubber belt seventy-five feet in length, used for driving the machinery, twenty-five feet of which was subsequently disposed of as hereinafter stated. The value of the remaining fifty feet was $20. There was also a set of Fairbanks scales, used in the business. On the same day Cox reconveyed the same property to the plaintiff, in mortgage, to secure the sum of $1,600—part of the purchase-money. The mortgage is still outstanding and unpaid. Cox immediately fitted up the building for the manufacture of window frames, sash, blinds, etc., and brought from Franklin and placed in the mill machinery valued as follows: 1 jointing-saw, $30; 1 swing-saw, $40; 1 buzz-planer, $140; 1 band-saw, $75; 1 saw-bench with saws, $40; 1 turning-lathe, $20; 5 counter-shafts, with hangers and pulleys, $50; belting for driving machinery, $100;—total, $495. He also bargained with one White for a Gordon planer of the value of $200, and placed it in the mill, the same to become his property when fully paid for. He finished paying for it after the alleged trespass. He exchanged the portable grist-mill, scales, and twenty-five feet of rubber belting, with the plaintiff's consent, for a Lee's patent moulding-machine of the value of $150, and placed it in the mill.

All the above machines were fastened to the floors of the building in a manner to render them firm and steady for use—the saw-bench, by iron rods, passing through the floor, with nuts on their lower ends; the others, either by common wood screws, passing through the base posts of the machine into the floor, and driven in by a screw driver, or by what are called "lag screws," having square heads for the purpose, and turned with a wrench instead of a screw-driver; in the latter cases, instead of the screws passing through holes in the base of the machines, there were slots into which they were received, so that, by removing two of the screws and loosening the other two, the machine could, by sliding it to one side, be removed. The hangers, by means of which the shafting throughout the building was suspended and held in place, were fastened by means of bolts passing through the timbers of the building, with nuts to make them secure. This machinery was all

operated by means of belts passing from pulleys attached to the shafting. All the above machines could be removed, by withdrawing the screws and rods, without injury to the building, and when removed would be equally capable of use in the same business in any other building adapted thereto. The shafting could also be removed, without injury to the building, by withdrawing the bolts holding the hangers.

March 15, 1880, Cox mortgaged the above described machinery, belting, and shafting to one N. A. Cox, to secure a loan of $400. May 24, 1880, the note and mortgage were assigned by N. A. Cox to R. A. Johnson, of the firm of Johnson & Grier, and are still outstanding. May 8, 1880, George C. Cox, being indebted to Johnson & Grier, they commenced a suit against him, and placed the writ in the hands of the defendant, a deputy sheriff, who attached, on the writ, the above described machinery, belting, shafting, and hangers. After the attachment, being denied entrance to the mill by Cox, the defendant burst open one of the doors, doing no more damage than was necessary. The machinery, shafting, pulleys, hangers, and belting were sold, on the writ, to Johnson & Grier, for $415. After the sale Johnson removed the property thus bid off, although forbidden by the plaintiff, declaring that he did so by virtue of the chattel mortgage assigned to him, and not by virtue of the sale.

The referee found for the plaintiff, and assessed damages in the sum of $940; but, if the court shall hold the plaintiff entitled to recover for any of the above described articles, and not for the rest, his damages are assessed at the value of those articles and no more. Both parties moved for judgment.

*Burrows & Jewell*, for the plaintiff.

*Burleigh & Adams*, for the defendant.

SMITH, J. The portable grist-mill, steam engine, boiler, shafting, pulleys, belts, and scales passed with the mill to Cox as fixtures. The understanding of the parties was that they were fixtures, their understanding being shown by the fact that they passed at once into the possession of Cox without question, and that subsequently a portion of them were exchanged by him for a moulding-machine. The same fixtures were embraced in the mortgage from Cox to the plaintiff, although not mentioned as such in it. The parties manifestly intended the mortgage to cover the same property that passed by the deed. *McRea* v. *Bank*, 66 N. Y. 489; 1 Jones Mort., s. 435. The effect of the exchange was, to make the moulding-machine a fixture in place of the property for which it was exchanged. The intention of the parties is shown by the fact that the machine was annexed to, and used with, the building upon the mortgaged premises; and it does not appear that the

plaintiff released or was asked to release his mortgage lien, or that Cox undertook to make the exchange without his consent.

As between Cox and White, the Gordon planer had not become the property of Cox at the time of the alleged trespass. Neither the plaintiff could hold it by his mortgage, nor the defendant by the attachment, as against White, without tendering to him the amount due on it. *Cochran* v. *Flint*, 57 N. H. 514. But, as between the plaintiff and Cox, and everybody else except White, the planer, having been annexed to the mill so as to become a fixture, became a part of the mortgage security. White having received his pay in full after the alleged ·trespass, the planer stands like the other machinery placed by Cox in the mill. Fixtures attached to the realty after the execution of a mortgage of it become a part of the mortgage security, if they are attached for the permanent improvement of the estate and not for a temporary purpose, or if they are such as are regarded as permanent in their nature, or if they are so fastened or attached to the realty that their removal would be an injury to it. *Burnside* v. *Twitchell*, 43 N. H. 390 ; 1 Jones Mort., s. 436.

The machinery brought from Franklin became fixtures as between the mortgagee and mortgagor. *Kittredge* v. *Woods*, 3 N. H. 506 ; *Despatch Line* v. *Bellamy Mfg. Co.*, 12 N. H. 205 ; *Baker* v. *Davis*, 19 N. H. 333 ; *Lathrop* v. *Blake*, 23 N. H. 46 ; *Tuttle* v. *Robinson*, 33 N. H. 104 ; *Wadleigh* v. *Janvrin*, 41 N. H. 503 ; *Burnside* v. *Twitchell*, 43 N. H. 390 ; *Cochran* v. *Flint*, 57 N. H. 514 ; *Kent* v. *Brown*, 59 N. H. 236 ; *Cavis* v. *Beckford*, 62 N. H. 229. They were such fixtures as are regarded as permanent in their nature, and necessary for doing the work of the mill. The buzz-planer and saw-bench were annexed to the building in the usual manner, and the counter-shafting by means of the hangers. The belting connected the saws and lathe with the pulleys on the counter-shafting, and operated them and the other machinery. The purposes of the annexation and the intent with which it is made are the important considerations. The owner turned his grist-mill into a sash, door, and blind factory. Such a shop without the machinery would be as useless as a grist-mill without mill-stones, or a saw-mill without saws (*Burnside* v. *Twitchell*, 43 N. H. 390), or a paper-mill without machinery for the manufacture of paper (*Lathrop* v. *Blake*, 23 N. H. 46). In New York, machinery attached to the realty is presumed to have been attached with a view to the permanent improvement of the freehold, in the absence of proof that the annexation was not intended to be permanent. *Potter* v. *Cromwell*, 40 N. Y. 287 ; *McRea* v. *Bank*, 66 N. Y. 489. Whether machines become a part of the realty does not depend so much upon the character of the fastening—whether it be slight or otherwise—as it does upon the nature of the article and its use, as connected with the use of the freehold. *Despatch Line* v. *Bellamy Mfg. Co.*, 12 N. H. 232, 233. A mill-stone, rest-

ing upon the iron-work fixed to the top of the perpendicular shaft which turns it, and is kept there by the force of gravity, may be a fixture. *Burnside* v. *Twitchell*, 43 N. H. 390, 394. A steam boiler or looms, used in a mill as part of it, and necessary for doing its work and carrying on its business, may be a part of it, though held in position only by their own weight. *Cavis* v. *Beckford*, 62 N. H. 229.

The facts in this case show an actual annexation of the machinery, and its applicability to the use to which the real estate was appropriated. The fact that Cox subsequently mortgaged the machinery is not material. It was after it had been annexed to the building and used in his business.

At the hearing, the plaintiff was allowed to amend by adding a count in trespass *de bonis*, against the defendant's exception. Whether justice requires the amendment is a question of fact to be settled at the trial term. *Piper* v. *Hilliard*, 58 N. H. 198.

The defendant offered to show what he said and did at the sale. The evidence was excluded, and the defendant excepted. The evidence was immaterial on the question of title, which was the only question tried.

The plaintiff is entitled to judgment for $940—the largest sum awarded by the referee.

*Case discharged.*

ALLEN J., did not sit: the others concurred.