Merrimack
No. 95-318

NEW ENGLAND TELEPHONE AND TELEGRAPH COMPANY & a.

v.

CITY OF FRANKLIN & a.

November 21, 1996

*McLane, Graf, Raulerson & Middleton, P.A.*, of Manchester (*Jack B. Middleton* and *James J. Tenn, Jr.* on the plaintiffs' joint brief, and *Mr. Middleton* orally), for plaintiff New England Telephone and Telegraph Company.

*Ransmeier & Spellman, P.C.*, of Concord (*Dom S. D'Ambruoso* and *R. Stevenson Upton* on the plaintiffs' joint brief), for plaintiffs Merrimack County Telephone Company and Contoocook Valley Telephone Company.

*Upton, Sanders & Smith*, of Concord (*Richard F. Upton* and *Robert Upton, II* on the brief, and *Mr. Richard Upton* orally), for the defendants.

HORTON, J. Following consolidation of various tax abatement proceedings, the Superior Court (*Nadeau*, C.J.) granted summary judgment to plaintiffs New England Telephone and Telegraph Company (NET), Merrimack County Telephone Company (MCT), and Contoocook Valley Telephone Company (CVT), holding that their communications equipment was personal, not real, property and therefore not subject to taxation by the municipal defendants. *See* RSA 72:6, :12 (1991). The defendants appeal. We affirm.

The plaintiffs are public utilities providing telecommunications services in New Hampshire. NET commenced separate actions for abatement of real estate taxes against the City of Franklin and fifteen other municipalities. NET disputed the defendants' treatment of its communications equipment as real estate, thereby challenging their authority to tax its equipment. The communications equipment at issue involves two basic categories: (1) distribu-

tion plant, which includes telephone poles, wires, and underground conduits, and (2) central office equipment, consisting of frames, switches, and other power equipment. The superior court consolidated NET's various actions, as well as a similar action brought by MCT and CVT against the Town of Hopkinton. The plaintiffs jointly moved for summary judgment, arguing that their communications equipment was personal property not subject to municipal taxation.

In support of the summary judgment motion, the plaintiffs submitted affidavits setting forth the following facts. All of the plaintiffs' poles, wires, and underground conduits located in the municipalities are placed either on public rights of way or on private property owned by third parties. Approximately ninety percent of the poles are located on public rights of way pursuant to licenses issued by the State or the municipalities. See RSA 231:159 et seq. (1993 & Supp. 1995). The remaining ten percent of the poles are placed on private property either by consent of the property owner or pursuant to an easement. The poles, wires, and underground conduits are installed in a manner that permits and facilitates their removal and relocation. Consequently, removal of that equipment is neither complicated nor time-consuming, and does not harm the underlying land or change its usefulness. The plaintiffs remove and relocate their poles, wires, and underground conduits at the request of the State or the applicable private landowner or municipality. In obtaining the licenses, consents, or easements for their poles, wires, and underground conduits, the plaintiffs insist on maintaining ownership of that equipment and refuse any requests to make the equipment a permanent part of the realty. The plaintiffs' central office equipment, most of which is located in buildings owned by the plaintiffs, is both portable and designed to permit removal and relocation. The plaintiffs' practice and policy is to move pieces of central office equipment among buildings in response to changes in technology or system use. Although certain frames are bolted to the buildings, their removal is achieved without affecting the usefulness of the buildings or the frames themselves. When the plaintiffs ultimately vacate a building used as a central office, they remove all of their equipment and merely transfer the building "as a shell." The vacated building, though devoid of central office equipment, retains utility for other commercial or professional uses.

In opposition to the motion for summary judgment, the defendants did not dispute the specific facts set forth by the plaintiffs. Moreover, the defendants' affidavits acknowledged the general removability and transportability of the communications equipment. The defendants, however, produced the following additional facts

regarding the equipment at issue. Installation of telephone poles typically involves placing them six feet into the ground. Telephone poles often have a life expectancy or replacement cycle exceeding forty years, and must be sufficiently sturdy to withstand harsh weather and vehicle collisions. Based on these additional facts and on the asserted importance to the plaintiffs of providing reliable and uninterrupted service, the defendants contended that the telephone poles and related equipment were "permanent."

The superior court found no genuine issue of material fact and held that the communications equipment was not real estate and, therefore, not taxable as a matter of law. *See* RSA 72:6, :12. On appeal, the defendants challenge the superior court's rulings: (1) that the items of communications equipment were not fixtures; (2) that the communications equipment was not so intimately intertwined with the underlying land as to become taxable as real estate; and (3) that the statutory authority for the plaintiffs' licenses on public rights of way did not grant rights amounting to easements.

 In reviewing the superior court's grant of summary judgment, "we consider the affidavits and other evidence, as well as all inferences properly drawn from them, in the light most favorable" to the defendants. *Boissonnault v. Bristol Federated Church*, 138 N.H. 476, 477, 642 A.2d 328, 328 (1994). If our review of that evidence discloses no genuine issue of material fact, and if the plaintiffs are entitled to judgment as a matter of law, we will affirm the grant of summary judgment. *Id.* at 477, 642 A.2d at 328; *see* RSA 491:8-a, III (1983). An issue of fact is "material" for purposes of summary judgment if it "affects the outcome of the litigation" under the applicable substantive law. *Horse Pond Fish & Game Club v. Cormier*, 133 N.H. 648, 653, 581 A.2d 478, 481 (1990) (quotation omitted).

"As a general rule taxes cannot be assessed and collected in this State except by authority of the legislature." *King Ridge, Inc. v. Sutton*, 115 N.H. 294, 296, 340 A.2d 106, 108 (1975). RSA 72:6 provides that "[a]ll real estate, whether improved or unimproved, shall be taxed except as otherwise provided." *See King Ridge*, 115 N.H. at 297, 340 A.2d at 108. Accordingly, if the items of communications equipment "are real estate within the meaning of that term as used in RSA 72:6, they are taxable unless exempted by some other provision." *Id.; see* RSA 72:12.

## I. Communications Equipment as Fixtures

██ The defendants primarily argue that the superior court erred by refusing to characterize the communications equipment as

fixtures and, therefore, by failing to treat the equipment as realty. "A chattel loses its character as personalty and becomes a fixture and part of the realty when there exists an actual or constructive annexation to the realty *with the intention of making it a permanent accession to the freehold*, and an appropriation or adaptation to the use or purpose of that part of the realty with which it is connected." *The Saver's Bank v. Anderson*, 125 N.H. 193, 195, 480 A.2d 82, 84 (1984) (quotation omitted). A mixed question of law and fact, *Graton & Knight Co. v. Company*, 69 N.H. 177, 178, 38 A. 790, 790 (1897), whether an item of property is properly classified as either personalty or a fixture turns on several factors, including: the item's nature and use; the intent of the party making the annexation; the degree and extent to which the item is specially adapted to the realty; the degree and extent of the item's annexation to the realty; and the relationship between the realty's owner and the person claiming the item. *See, e.g., The Saver's Bank*, 125 N.H. at 195, 480 A.2d at 84; *Automatic Sprinkler Corp. v. Marston*, 94 N.H. 375, 376, 54 A.2d 154, 155 (1947); *Graton & Knight Co.*, 69 N.H. at 178, 38 A. at 790; *Dana v. Burke*, 62 N.H. 627, 629 (1883); *Wadleigh v. Janvrin*, 41 N.H. 503, 518 (1860). The central factors are "the nature of the article and its use, as connected with the use" of the underlying land, *Langdon v. Buchanan*, 62 N.H. 657, 660 (1883); *see Despatch Line of Packets v. Bellamy Man. Co.*, 12 N.H. 205, 233 (1841), because these factors provide the basis for ascertaining the intent of the party who affixes or annexes the item in question. *Wadleigh*, 41 N.H. at 518.

█ In this case, the items of communications equipment did not constitute fixtures. Each of the relevant factors supports the superior court's holding that the property remained personalty. The poles, wires, and central office equipment, though placed in the ground or bolted to the buildings, were readily removable and transportable without affecting the utility of the underlying land, the buildings, or the equipment itself. Because removal of the equipment would not render the land or buildings "incomplete and unfit for use," and because the equipment could be "equally useful and adapted for general use elsewhere," the communications equipment did not constitute fixtures. *Dana*, 62 N.H. at 629 (quotation omitted); *see Public Serv. Co. of N.H. v. Town of Seabrook*, 126 N.H. 740, 746, 496 A.2d 352, 356 (1985). In addition, the very nature of telephone poles and wires, as well as their use by the plaintiffs in connection with integrated telecommunications systems, belies the proposition that the equipment became a permanent and essential part of the underlying realty so as to pass by conveyance with it. *Cf.*

*Dana*, 62 N.H. at 629 (fixtures pass by conveyance of the realty as incident to it). Furthermore, the statute governing the licensing of telephone poles and wires on public ways specifically provides for their removal on ten days' notice and therefore establishes, as a matter of law, their impermanence. *See* RSA 231:177-:181 (1993). Finally, the defendants never challenged the plaintiffs' asserted intent to maintain the communications equipment as personalty.

The defendants' other arguments on the fixtures issue are not persuasive. First, the defendants' evidence concerning the installation, durability, and longevity of the distribution equipment failed to raise a genuine issue of material fact regarding the status of the property under our law of fixtures in light of the defendants' failure to contradict the specific facts in the plaintiffs' affidavits. *See Carbur's, Inc. v. A & S Office Concepts, Inc.*, 122 N.H. 421, 423, 445 A.2d 1109, 1110-11 (1982); *Arsenault v. Willis*, 117 N.H. 980, 983, 380 A.2d 264, 266 (1977). Similarly, the defendants' conclusory assertions concerning the "permanent" nature of the communications equipment did not satisfy their burden in opposing the summary judgment motion. *See Gamble v. University of New Hampshire*, 136 N.H. 9, 16, 610 A.2d 357, 362 (1992); *see also* RSA 491:8-a, IV. On this point, we reject the defendants' argument that the rules of evidence pertaining to expert witness testimony, *see* N.H. R. EV. 702-705, somehow rendered their expert affidavits sufficient to defeat summary judgment. The defendants were required to "set forth *specific facts* showing that there [was] a genuine issue for trial," RSA 491:8-a, IV (emphasis added), and nothing in the summary judgment statute suggests that a different rule applies in cases involving experts. *See Hayes v. Douglas Dynamics, Inc.*, 8 F.3d 88, 92 (1st Cir. 1993) (under federal summary judgment standards, affidavit from expert still must set forth specific facts), *cert. denied*, 114 S. Ct. 2133 (1994); *Morais v. Yee*, 648 A.2d 405, 409 (Vt. 1994) (under state summary judgment statute, even expert affidavit must present specific facts).

We need not address the defendants' claim that the superior court erroneously curtailed discovery given their failure to devote anything more than a "passing reference" to this issue in their brief. *D.W. Clark Road Equip., Inc. v. Murray Walter, Inc.*, 124 N.H. 281, 285, 469 A.2d 1326, 1329 (1983).

Finally, we disagree with the defendants' assertion that the superior court's fixture analysis ignored the well-settled principle that "[t]itle is not the test of taxability." *Lin-Wood Dev. Corp. v. Town of Lincoln*, 117 N.H. 709, 711, 378 A.2d 741, 742 (1977) (quotation omitted). The superior court properly considered the

relationship between the telephone companies and the owners of the underlying realty, see The Saver's Bank, 125 N.H. at 195, 480 A.2d at 84, correctly recognized that the communications equipment at issue in this case — if fixtures — would become "part of the realty," id., and merely remarked that such fixtures would therefore be taxable to the owners of the realty.

## II. Equipment as Intimately Intertwined with Underlying Realty

Relying on King Ridge, 115 N.H. at 299, 340 A.2d at 110, and Lin-Wood Development, 117 N.H. at 711, 378 A.2d at 742, the defendants also argue that the communications equipment is taxable as real estate because the exclusive use of that equipment is intimately intertwined with the primary use of the realty itself. We disagree. In King Ridge and Lin-Wood Development, we held that ski lifts and associated equipment used for transporting skiers to the top of ski slopes were intimately intertwined with the primary use of the underlying land, which had been cleared and graded specifically for downhill skiing. King Ridge, 115 N.H. at 299, 340 A.2d at 110; see Lin-Wood Dev. Corp., 117 N.H. at 711, 378 A.2d at 742. In concluding that the ski lift equipment was taxable, we recognized that the equipment was essentially useless unless employed on a ski slope and that the underlying "land [could not] be used as a winter ski area without a facile means for conveying people to the top of the ski runs." King Ridge, 115 N.H. at 299, 340 A.2d at 110.

The interdependence that existed between the equipment and the land in King Ridge and Lin-Wood Development is not present in this case. Here, there was no evidence concerning unique or special aspects of the underlying realty that made the communications equipment useful; rather, the plaintiffs' uncontroverted evidence demonstrated that the communications equipment was generally capable of performing its intended function without regard to the specific features of the land. Similarly, the undisputed evidence established that the underlying realty would retain its utility even without the communications equipment.

## III. Pole Licenses as Easements

In an additional attempt to transform the communications equipment into realty, the defendants argue that the plaintiffs' licenses for the placement of poles and wires on public ways, together with the distribution plant itself, effectively constitute easements. Implicit in this argument is the basic distinction between an easement and a license: an easement is a "nonpossessory interest in realty," while a license is a "transient or impermanent

interest which does not constitute an interest in land." *Waterville Estates Assoc. v. Town of Campton*, 122 N.H. 506, 508, 509, 446 A.2d 1167, 1168, 1169 (1982) (quotation omitted). The defendants' argument fails, however, because it is contradicted by the plain language of the statute providing for the plaintiffs' interest. *See* RSA 231:159 *et seq.* The statute not only refers to that interest as a "license," *e.g.*, RSA 231:161, IV-VI (1993), but also provides: "No enjoyment by a . . . corporation for any length of time of the privilege of having or maintaining wires and their supports and appurtenances in, upon, over, or attached to any building or land of other persons, shall create an easement or raise any presumption of a grant thereof." RSA 231:174 (1993).

In concluding that the defendants lacked authority to tax the communications equipment, we express no opinion on the taxability or value of the plaintiffs' easements on private property. In an unappealed portion of its order granting summary judgment, the superior court determined that the defendants had not sought to tax such easements in this case.

*Affirmed.*

All concurred.