Hillsborough-southern judicial district
No. 93-734

SOUTHERN NEW HAMPSHIRE WATER COMPANY, INC.

v.

TOWN OF HUDSON

November 7, 1994

140

*Boutin & Solomon, P.A.,* of Londonderry (*Edmund J. Boutin* on the brief and orally), for the plaintiff.

*Donahue, McCaffrey, Tucker & Ciandella,* of Exeter (*John J. Ratigan* on the brief and orally), for the defendant.

JOHNSON, J.   The plaintiff, Southern New Hampshire Water Company, Inc. (the utility), sued the defendant, the Town of Hudson (the town), for an abatement of *ad valorem* taxes assessed on the utility's property. *See* RSA 75:1 (1991); RSA 76:17 (Supp. 1993). The Superior Court (*Lynn,* J.) granted an abatement for each tax year in question, but in an amount substantially less than requested. The utility appeals, arguing that the trial court's calculation of fair market value was erroneous as a matter of law and unsupported by the evidence. The utility also challenges the trial court's qualification of a town witness as an expert and its assessment of his credibility. We affirm.

At trial, the utility advocated a fair market value based on a calculation of the property's capitalized earnings. The town argued a considerably higher figure, based on the reproduction cost approach to value. The town's calculation contained deductions for physical and functional depreciation, but not for economic depreciation. The trial court adopted the town's calculations but subtracted ten percent for economic depreciation.

■ Our standard of review is as follows: On appeal, "[w]e sustain the findings and rulings of the trial court unless they are lacking in evidential support or tainted by error of law." *Public Serv. Co. of N.H. v. Town of Bow,* 139 N.H. 105, 107, 649 A.2d 65, 66 (1994) (quotation omitted).

■ We first address the utility's claim that the trial court's calculation of fair market value was erroneous as a matter of law. As we have repeatedly stated, the trier of fact may use any one or a combination of five appraisal techniques in valuing public utility property: original cost less depreciation (rate base), comparable sales, cost of alternative facilities, capitalized earnings, and reproduction cost less depreciation. *See id.* at 107, 649 A.2d at 66–67; *Appeal of Public Serv. Co. of N.H.,* 124 N.H. 479, 482, 471 A.2d 1182, 1184 (1984); *Public Serv. Co. v. Town of Ashland,* 117 N.H. 635, 638, 377 A.2d 124, 125 (1977); *New England Power Co. v. Littleton,* 114 N.H. 594, 598, 326 A.2d 698, 701 (1974). We have said that "typically all relevant factors must be considered," *Public Serv. Co. v. Town of Ashland,* 117 N.H. at 640, 377 A.2d at 127, but a trier of fact need not allocate specific weight to any one of the approaches listed, *see New England Power Co. v. Littleton,* 114 N.H. at 599, 326 A.2d at 701. Rather, "[j]udgment is the touchstone." *Id.* Such judgment was appropriately exercised here. The trial court's order reveals a careful and thorough consideration of each of the valuation methods, and its ultimate decision reflects this. We therefore cannot say that the court erred as a matter of law.

■ We likewise reject the utility's argument that the trial court's decision is unsupported by the evidence. The court's reproduction cost determination of fair market value was based on the town's expert's testimony and report, both of which were admitted into evidence. Although the utility's expert presented a different reproduction cost calculation, "[c]onflicts in the evidence were to be resolved by the [trial judge], who could accept or reject such portions of the evidence presented as he found proper, including that of the expert witnesses." *Id.* at 607, 326 A.2d at 706.

■ Moreover, the reproduction cost calculation performed by the utility's expert is suspect because it completely excludes over two million dollars' worth of property donated to the utility by developers. The utility explains that the New Hampshire Public Utilities Commission (PUC) does not allow inclusion of this property in rate base, thus circumscribing the utility's ability to earn on it. Be that as it may, PUC regulation has nothing to do with determining the amount of money it would take to reproduce or replace all of the utility's property, the necessary first step in the reproduction cost approach to value.

■ As for the second step, the calculation of depreciation, the utility questions the trial court's use of a ten percent discount for economic depreciation, contending that it fails to reflect the full impact of PUC regulation on the property's fair market value. The utility's analysis, however, fundamentally and erroneously depends on the assumption that a purchaser of the utility's property would be regulated by the PUC. The *town* could acquire the utility's property, *see* RSA 38:3 (1988), and would not be as restricted in its earning power as a utility. The utility maintains that a purchase by the town is unlikely, but the same is true of a purchase by any entity. The unlikelihood of sale is, after all, the reason why valuation of public utilities is so extraordinarily difficult and why this court has typically given the trier of fact considerable deference in this area. *Cf. Public Serv. Co. v. Town of Ashland,* 117 N.H. at 638, 639, 377 A.2d at 125, 126; *Public Service Co. v. New Hampton,* 101 N.H. 142, 144, 146, 136 A.2d 591, 594, 595 (1957).

■ Returning to the trial court's calculations, the utility argues that the ten percent figure derives from no one piece of evidence and was likely influenced by decisions of the New Hampshire Board of Tax and Land Appeals containing similar discounts. *See, e.g., Public Serv. Co. of N.H. v. Town of Bow,* No. 1980-82, 1991 WL 204509, at *10 (N.H. B.T.L.A. Apr. 11, 1991) (ten percent); *Public Serv. Co. of N.H. v. Town of Farmington,* Nos. 1281-81, 1940-82, 1990 WL 149479, at *4 (N.H. B.T.L.A. Feb. 9, 1990) (fifteen percent); *Public Serv. Co. of N.H. v. Town of Londonderry,* Nos. 1230-81, 2084-82, 1989 WL 141023, at *10 (N.H. B.T.L.A. Mar. 14, 1989) (fifteen percent). We find no error, however, in the court's judgment call. *Cf. Public Serv. Co. v. Town of Ashland,* 117 N.H. at 639, 377 A.2d at 126. This court has recognized the relevance of economic depreciation, *see Appeal of Public Serv. Co. of N.H.,* 124 N.H. at 484, 471 A.2d at 1185; *Royal Gardens Co. v. Concord,* 114 N.H. 668, 671–72, 328 A.2d 123, 125 (1974); *New*

*England Power Co. v. Littleton,* 114 N.H. at 605, 326 A.2d at 705, but has never attempted to tie the fact finder's hands with a rigid fair market value formula in the absence of legislative directive, *see New England Power Co. v. Littleton,* 114 N.H. at 599, 326 A.2d at 701.

■ We also note that the utility's expert calculated economic depreciation by subtracting original cost less depreciation (rate base) from reproduction cost less physical and functional depreciation. Accordingly, in perfect mathematical circularity, reproduction cost less all three forms of depreciation equalled rate base, transforming the utility's reproduction cost calculation into a meaningless exercise. *See Public Serv. Co. of N.H. v. Town of Farmington,* Nos. 1281-81, 1940-82, 1990 WL 149479, at *4; *Public Serv. Co. of N.H. v. Town of Ashland,* No. 0439-80 *et al.,* 1982 WL 12156, at *5 (N.H. B.T.L.A. Oct. 19, 1982). If this court had meant economic depreciation to be nothing more than a way to equate reproduction cost with rate base, we would have had no reason to approve reproduction cost as a valid, independent approach to value.

■ The utility disputes the trial court's heavy reliance on reproduction cost at the expense of the capitalized earnings approach. Again, we find no error. First, "[w]e have repeatedly held that . . . evidence[] in the nature of reproduction or replacement costs[] is relevant to assessing market value . . . . [S]uch evidence may be more or less relevant depending on the extent to which the property would in fact be replaced or reproduced." *Public Serv. Co. v. Town of Ashland,* 117 N.H. at 640, 377 A.2d at 126 (citation omitted). The superior court found that the utility's property would be replaced or reproduced if destroyed, and this finding is amply supported by the evidence. Second, the utility's capitalized earnings approach, like its reproduction cost analysis, fails to consider an unregulated purchaser and, thus, overestimates the effect of PUC regulation on fair market value.

■ We turn now to the utility's contention that the trial court erroneously qualified the town's witness, George Sansoucy, as an expert. In *Public Service Co. of New Hampshire v. Town of Bow,* 139 N.H. at 108, 649 A.2d at 67–68, this very issue arose, involving the same witness, and we affirmed the trial court's qualification ruling. *See also Dwire v. Sullivan,* 138 N.H. 428, 431–32, 642 A.2d 1359, 1361 (1994). Because the trial judge in this case relied on the *voir dire* examination of Sansoucy in the *Bow* trial, we discern no relevant distinction between the two cases and affirm here as well.

■ Finally, we consider the utility's argument that Sansoucy's testimony was so lacking in credibility that the trial court should not have relied on it. The utility points to Sansoucy's three-month suspension by the Federal Energy Regulatory Commission (FERC) for misrepresentation and to various aspects of Sansoucy's testimony, particularly his use of sources. Credibility, of course, is for the trial judge to determine as a matter of fact "and if the findings could reasonably be made on all the evidence they must stand." *Gordon v. Gordon,* 117 N.H. 862, 865–66, 379 A.2d 810, 813 (1977). We find no reason to disturb the court's assessment of Sansoucy's credibility. The court's order reflects a careful weighing of this witness's testimony in light of the FERC incident. As for Sansoucy's occasionally one-sided reading of sources, we see no reason to assume from this a design to mislead the court. The utility's brief, for example, twice erroneously cites *Royal Gardens Co. v. City of Concord,* 114 N.H. 668, 328 A.2d 123, and *New England Power Co. v. Town of Littleton,* 114 N.H. 594, 326 A.2d 698, for the proposition that "the effect of regulation must be reflected in a property's assessment," and attributes a quote to *Appeal of Public Service Co. of New Hampshire,* 124 N.H. 479, 471 A.2d 1182, that appears nowhere in New Hampshire case law and, in fact, is a misstatement of the court's holding in that case. Although these lapses may cause us to scrutinize the utility's arguments more carefully, we do not deduce from them a purpose to mislead.

■ For the town's part, we take this occasion to refer its counsel to Supreme Court Rule 16(11), containing our double-spacing requirement and fifty-page brief limit. These dictates should be read together. Thus, double-spacing cannot be evaded to meet the fifty-page limit or vice versa. The town's extensive use of one and one-third spacing—which, we calculate, converted a fifty-nine page double-spaced brief into a brief with forty-eight pages—is especially vexing because we denied the utility's motion to exceed the fifty-page limit.

In closing, we quote from a footnote to the trial court's order:

> [S]ince taxes are a legitimate operating expense, the utilities are allowed to include them in rate base, and thus simply pass along any tax increases to ratepayers in the form of higher utility bills. On the other hand, in those instances where the utility is fortunate enough to win a battle and reduce its tax payments, the town's other taxpayers must make up the difference. When one considers that . . . ratepayers and taxpayers are likely to

be one and the same persons, it becomes obvious that the only real winners in this game are the lawyers and expert witnesses, who collect their fees regardless of the outcome. To avoid this needless waste of time and money, I join with the [Board of Tax and Land Appeals] in urging the legislature to consider the adoption of a uniform method of utility valuation for ad valorem tax purposes.

(Citation omitted.) Although we understand that ratepayers and taxpayers are not inevitably "one and the same," we find the trial court's point well taken.

*Affirmed.*

All concurred.