Coos
No. 96-423

CROWN PAPER CO. D/B/A CROWN VANTAGE & a.

v.

CITY OF BERLIN

December 31, 1997

564

*Sulloway & Hollis, P.L.L.C.*, of Concord (*Martin L. Gross & a.* on the brief, and *Mr. Gross* orally), for the plaintiffs.

*Upton Sanders & Smith*, of Concord (*Robert Upton II* and *Charles W. Grau* on the brief, and *Mr. Upton* orally), for the defendant.

*McLane, Graf, Raulerson & Middleton, P.A.*, of Manchester (*Jack B. Middleton* and *Ellen L. Arnold* on the brief), for the Business and Industry Association of New Hampshire and New England Legal Foundation, as *amici curiae*.

*H. Bernard Waugh, Jr.*, of Concord, by brief for the New Hampshire Municipal Association, as *amicus curiae*.

*Jeffrey R. Howard*, attorney general, by brief for the State, as *amicus curiae*.

BRODERICK, J. Crown Paper Co. d/b/a Crown Vantage and its subsidiary, James River-N.H. Electric, Inc., (collectively Crown Vantage) appeal a Superior Court (*Smith*, J.) order substantially denying requested tax abatements for tax years 1993 and 1994. We reverse in part, affirm in part, and remand.

The City of Berlin (city) assessed property of James River Paper Company, Inc., James River-N.H. Electric, Inc., and Berlin Mills Railway (BMR), which were subsequently acquired by Crown Vantage. Crown Vantage owns and operates a wood pulp mill and three hydroelectric facilities located in Berlin. The pulp mill consists of a chemical processing facility capable of producing pulp, which is transferred to the paper mill in neighboring Gorham. The facility includes paper machines, bleachers, dryers, boilers and

steam turbines, storage and other tanks, a new chemical recovery unit, computer control rooms, buildings, land improvements, and infrastructure.

The hydroelectric facilities use water to generate electricity and include dams, waterways, penstocks, buildings, hydroelectric turbines and generators, controls, switch gears, and other accessories. The mill grounds are surrounded by an electrical system that receives high voltage electricity from Gorham and transforms it into electricity for the mill.

In 1993, as part of a general revaluation, the city increased the valuation of Crown Vantage's property from approximately $47 million to $97 million. In 1994, the city again increased the valuation to approximately $153 million. Crown Vantage sought abatements for both tax years on the basis that approximately $45 million of the 1993 valuation and $101 million of the 1994 valuation derived from nontaxable factory machinery and other property not subject to tax as a matter of law. The disputed assessments involved the land, buildings, and certain production equipment comprising the pulp mill, two pipelines that carry processed pulp to the paper mill in Gorham, and a railroad repair shop.

With the exception of hydroelectric turbines and generators, the superior court found all of the disputed property taxable. On appeal, Crown Vantage argues that the trial court erred as a matter of law in finding the disputed property taxable and in accepting the city's valuation.

■ This court reviews questions of law *de novo*. *See Fleet Bank-N.H. v. Chain Const. Corp.*, 138 N.H. 136, 139, 635 A.2d 1348, 1350 (1993). Findings of fact, however, are overturned only if unsupported by the evidence. *See Carrier v. McLlarky*, 141 N.H. 738, 740, 693 A.2d 76, 78 (1997).

I

Crown Vantage argues that the trial court committed reversible error in defining "factory machinery" and in subsequently applying its definition to the disputed property. The trial court ruled that RSA 72:6 (1991) authorized the city to tax all property of Crown Vantage, except for its hydroelectric turbines and generators. The trial court concluded that the items of property in dispute were not factory machinery, and hence immune from local property taxes, because they lacked moving parts. The court reasoned that the disputed items were fixtures intimately intertwined with the under-lying realty and, thus, taxable under RSA 72:6.

██    Absent legislative authority, taxes cannot be assessed in New Hampshire. *N.E. Tel. & Tel. Co. v. City of Franklin*, 141 N.H. 449, 452, 685 A.2d 913, 916 (1996). "This court is the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole." *Cheever v. Southern N.H. Regional Med. Ctr.*, 141 N.H. 589, 590-91, 688 A.2d 565, 566-67 (1997) (quotation and brackets omitted).

██    To some extent, this case involves the interplay between RSA 72:6, which declares "all real estate [taxable] except as otherwise provided," and RSA 72:7 (1991), which identifies specific classes of property that are deemed to be real estate and therefore taxable. *Cf. Kolodny v. Laconia*, 96 N.H. 338, 338, 76 A.2d 507, 508 (1950) (noting legislature's power to deem property taxable regardless of its classification at common law). The predecessor to RSA 72:7 — RS 39:2 (1842) — provided, *inter alia*, that "buildings, mills, carding machines, factory buildings and machinery, wharves, ferries, toll bridges, locks and canals, shall for the purpose of taxation be deemed real estate." Although this statute was amended several times prior to 1970, *see, e.g.*, GS 49:3 (1867); Laws 1917, 6:1, factory machinery continued to be taxable as real estate. In 1970, as part of a larger change in the tax system featuring the enactment of the business profits tax, RSA 72:7 was amended and "machinery" deleted. By creating the business profits tax while simultaneously removing classes of property from taxation, the State shifted from taxing factory machinery to taxing business profits. To supplant local property tax losses suffered by cities and towns as a consequence of the new scheme, the State provided revenue sharing in amounts equal to the previous taxes collected. Laws 1970, 5:16; *Opinion of the Justices*, 110 N.H. 117, 120-21, 262 A.2d 290, 293 (1970) (reprinting excerpt from the Report of the Citizens Task Force). These changes, both within RSA 72:7 and throughout the tax system, evidence the legislature's intention to exempt factory machinery from real estate taxation after 1970.

The city argues that despite the 1970 amendment to RSA 72:7, certain factory machinery, namely bulky items and fixtures, remained taxable under RSA 72:6. In sum, the city proposes that prior to 1970, RSA 72:7 authorized a tax on a subclass of factory machinery not otherwise taxable under RSA 72:6. Therefore, the city asserts that the 1970 amendment did not affect factory machinery taxable under RSA 72:6. We need not address this argument because, as discussed, the trial court correctly recognized that after 1970, factory machinery was no longer subject to tax.

The city next argues that the trial court correctly held that the disputed property is not "factory machinery." The trial court found that the definition this court earlier supplied for "machinery," *see Kolodny*, 96 N.H. at 339, 76 A.2d at 508, as the term was used in RSA 72:7, was ambiguous. It therefore sought a dictionary definition and ultimately concluded that machinery, to be so classified, required moving parts.

The trial court's definition is not only unduly narrow and ignores the qualities of machinery in the modern age, *see Gulf Oil Corporation v. City of Philadelphia*, 53 A.2d 250, 253-54 (Pa. 1947), but it is also at odds with earlier opinions of this court. As interpreted by this court, the word "machinery" in RSA 72:7 meant "certain instruments of production or machines which by their nature are designed for use in connection with real estate whether or not they are part of or attached to the realty." *Kolodny*, 96 N.H. at 339, 76 A.2d at 508; *see Bull v. Gowing*, 85 N.H. 483, 485, 160 A. 475, 476 (1932). While this interpretation of machinery was admittedly broad, we later adopted an interpretation that limited "machinery" to "factory machinery," consistent with administrative interpretations and legislative acceptance. *King Ridge, Inc. v. Sutton*, 115 N.H. 294, 297-98, 340 A.2d 106, 109 (1975); *see* RL 76:4 (1942) (directing selectmen to specify value of "factories and their machinery"). Effectively, "factory machinery," as the definition was applied in *King Ridge, Inc.*, included instruments of production or machines designed for use in mills or factories whether or not they were part of or affixed to the realty. *See King Ridge, Inc.*, 115 N.H. at 298, 340 A.2d at 109. Using that definition, the court ruled in *King Ridge, Inc.*, that ski lifts were not factory machinery. The ski lifts were found taxable because they were fixtures intimately intertwined with the use of the underlying real estate. *Id.* at 299, 340 A.2d at 110. At no time have we defined "factory machinery" as requiring moving parts, and we decline to do so now.

Accordingly, the trial court's reliance upon the dictionary definition of "machinery" is misplaced and its requirement of moving parts is an error of law. The trial court's ruling defining factory machinery and applying its definition to the disputed items is reversed, and the matter remanded to the trial court for fact-finding consistent with this opinion. On remand, the trial court must examine each item of property in dispute to determine whether it is factory machinery as we have defined it and thus no longer taxable. Because neither party appeals the trial court's determination that the hydroelectric turbines and generators are not taxable, *see N.E.*

*Brickmaster v. Town of Salem*, 133 N.H. 655, 658, 582 A.2d 601, 602 (1990), these items need not be considered.

In rare circumstances, factory machinery may still be subject to taxation under RSA 72:6. *See King Ridge, Inc.*, 115 N.H. at 299, 340 A.2d at 110. This would occur where the factory machinery has a special use or multiple uses, independent of or unrelated to the process of production, that are intimately intertwined with the underlying realty. Where such circumstances exist, the factory machinery should be taxed in proportion to its other use. *Cf. St. Paul's School v. City of Concord*, 117 N.H. 243, 256-57, 372 A.2d 269, 278 (1977).

■ The meaning of the term "intimately intertwined" is well established. *See N.E. Tel. & Tel. Co.*, 141 N.H. at 455, 685 A.2d at 918; *cf. Automatic Sprinkler Corp. v. Marston*, 94 N.H. 375, 376, 54 A.2d 154, 155 (1947) (reasoning that water tank was clearly necessary to beneficial enjoyment of factory). For a piece of factory machinery to be intimately intertwined with the underlying realty and thus taxable, the trial court must determine that some characteristic of the underlying realty makes a special or other use of the factory machinery useful, and that the special or other use of the factory machinery renders the underlying realty useful. *See N.E. Tel. & Tel. Co.*, 141 N.H. at 455, 685 A.2d at 918; *see also King Ridge, Inc.*, 115 N.H. at 299, 340 A.2d at 110 (holding use of ski lifts to be intimately intertwined with primary use of land). Such a relationship is rare and may not exist between any factory machinery and the underlying realty in this case. Nonetheless, this determination is for the trial court.

## II

Crown Vantage makes several arguments challenging the trial court's ruling that the tax due shall be calculated on the basis of the city's *ad valorem* assessment. Because the parties stipulated to the proper equalization ratio, the court only considered the property's fair market value in relation to its assessed value.

■ "[I]f a tax system is to be effective, the assessments of the taxing authorities must be deemed correct and justifiable . . . ." *Appeal of Steele Hill Development, Inc.*, 121 N.H. 881, 884, 435 A.2d 1129, 1131 (1981). Consequently, Crown Vantage had the burden of proving that its taxable property was in the aggregate overvalued and the total assessment excessive. *See Appeal of Andrews*, 136 N.H. 61, 64, 611 A.2d 632, 634 (1992). In attempting to meet this

burden, Crown Vantage argued that the income method of valuation, specifically the business enterprise value method, provided the most accurate assessment of fair market value. The court, however, adopted the city's method of valuation and assessment, concluding that Crown Vantage failed to meet its burden.

There are multiple approaches to the valuation of property. *See Southern N.H. Water Co. v. Town of Hudson*, 139 N.H. 139, 141, 649 A.2d 847, 848 (1994). "There is no rigid formula which can be used to arrive at full and true value" for property tax assessment, "[n]or is specific weight required to be allocated to any of the several approaches." *New England Power Co. v. Littleton*, 114 N.H. 594, 599, 326 A.2d 698, 701 (1974). Rather, "all relevant factors must be considered," and "judgment is the touchstone." *Southern N.H. Water Co.*, 139 N.H. at 141, 649 A.2d at 848 (quotations and brackets omitted).

At trial, each party's expert witness testified regarding the various methods of property valuation — comparable sales, income, and cost. Both experts agreed that, given the infrequency of paper mill sales, the comparable sales method provided only a secondary indicator of valuation. The experts disputed, however, whether an income method or cost method provided the most accurate assessment of property value. Crown Vantage's expert focused on the business enterprise valuation method, an income method which calculates the market value of the business on the property. The city's expert relied primarily on the cost method.

■ Crown Vantage argues that the trial court's decision to reject the business enterprise valuation method was unsupported by the record. Crown Vantage's argument is readily dismissed by the common principle that "conflicts in the evidence [are] to be resolved by the trial judge, who could accept or reject such portions of the evidence presented as he found proper, including that of the expert witnesses." *Id.* (quotations and brackets omitted). The trial court's determination that the tax due shall be calculated based upon the city's valuation is supported by the city's expert's testimony and report. *Cf. General Dynamics Corp. v. Board of Assessors*, 444 N.E.2d 1266, 1271 (Mass. 1983) (recognizing that trial judge would have been correct in adopting either income or replacement cost).

■ Crown Vantage also argues that in not responding specifically to the parties' requests for findings and rulings, the trial court made conclusory statements and inadequate factual findings.

Although a superior court justice sitting without a jury is generally under no obligation to make findings and rulings

in support of a decree unless a party asks for them, when either party does request them, RSA 491:15 requires a statement of facts and legal rulings in jury-waived and non-jury cases heard in accordance with RSA 491:13 and RSA 491:14, respectively. The trial judge in such a case need not respond expressly to every specific request filed by a party, but the court is obligated to make findings of the "basic" or "essential" facts that are sufficient to support the ultimate decision. This may be done in narrative form, and the essential rulings of law may be likewise explained. The object is to allow an opportunity for adequate review in this court by providing us with the actual basis for the trial court's decision, in terms of facts found and law applied.

*M.A. Crowley Trucking v. Moyers*, 140 N.H. 190, 195, 665 A.2d 1077, 1080-81 (1995) (quotations omitted). The trial court's twenty-page narrative order, including several pages of analysis of the different valuation methods presented by the parties, provides this court with ample opportunity to review the basis of the trial court's decision, both as to facts found and law applied. *See id.*

The order indicates that the trial court made all necessary determinations to support its findings. By ruling that the tax due should be calculated utilizing the city's assessment, the court decided that the city properly appraised and assessed all property. *Cf. Poorvu v. City of Nashua*, 118 N.H. 632, 634, 392 A.2d 138, 139 (1978) (reversing trial court's ruling that no evidence of market value of other properties was presented where plaintiff proffered ratio of assessed values to sales prices of comparable properties). Because the court thoroughly considered each of the valuation methods presented, and its decision is supported by the record, we decline to rule that the court erred in deciding that Crown Vantage failed to meet its burden. *See Southern N.H. Water Co.*, 139 N.H. at 141, 649 A.2d at 848.

Crown Vantage also argues that the trial court erred as a matter of law in interpreting our ruling in *Cocheco Co. v. Strafford*, 51 N.H. 455, 478 (1871), as prohibiting the use of the income method for *ad valorem* assessment of property that is part of an integrated facility located in more than one taxing community. Assuming, without deciding, that the trial court erred in its legal interpretation of *Cocheco Co.*, the court relied upon independent grounds sufficiently supported by the record in rejecting the business enterprise valuation. *See Colby v. Colby*, 96 N.H. 452, 455-56, 79 A.2d 343, 346 (1951). The trial court noted that the income method requires

several subjective assumptions, which may equally apply to the business enterprise valuation method, and acting within its discretion, properly rejected the business enterprise valuation method as a less accurate indicator of value in the context of this case. *See Southern N.H. Water Co.*, 139 N.H. at 141, 649 A.2d at 848; *General Dynamics Corp.*, 444 N.E.2d at 1273.

Accordingly, except as otherwise indicated in this opinion, the court's decision in favor of the city's assessment is affirmed.

## III

Crown Vantage also argues that the trial court erred in permitting the city to tax the BMR Repair Shop (repair shop). According to RSA 82:37 (1991), "[t]he real estate of any railroad . . ., not used in its ordinary business, shall be appraised and taxed under RSA 72." We have interpreted this language to mean that the State has the exclusive authority to tax railroad property, except that cities or towns may tax a railroad's real estate which is not used in its ordinary business. *Boston & Maine R.R. v. Concord*, 78 N.H. 192, 192-93, 98 A. 66, 67 (1916) (decided under prior law).

■■■ As the party seeking an abatement, Crown Vantage had the burden of proving that BMR owned the repair shop and that BMR used the repair shop in its railroad business. *Cf. Appeal of Steele Hill Development, Inc.*, 121 N.H. at 884, 435 A.2d at 1131 (burden of overturning action of assessors is on the taxpayer); *Appeal of Andrews*, 136 N.H. at 64, 611 A.2d at 634. In its initial order, the trial court failed to specifically discuss the taxation of the repair shop, merely stating that "all of the disputed property is properly taxable pursuant to RSA 72:6." The order denying Crown Vantage's motion to reconsider, which specifically notes the trial court's failure to address this issue, merely identifies the repair shop as real estate. Neither order mentions RSA 82:37. Consequently, we are unable to conduct an adequate review of this issue. *See Appeal of Lalime*, 141 N.H. 534, 540, 687 A.2d 994, 999 (1996). Thus, we remand this issue to the trial court for further findings.

After review of the record, we find that the remainder of Crown Vantage's arguments are without merit and do not warrant further discussion. *See, e.g., Vogel v. Vogel*, 137 N.H. 321, 322, 627 A.2d 595, 596 (1993).

*Affirmed in part; reversed in part; remanded.*

All concurred.