NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Belknap
No. 2016-0151


DIRECTV, INC.

v.

TOWN OF NEW HAMPTON

Argued: February 16, 2017
Opinion Issued: May 26, 2017


Sulloway & Hollis, P.L.L.C., of Concord (Margaret H. Nelson and Jay Surdukowski on the brief, and Ms. Nelson orally), for the plaintiff.


Mitchell Municipal Group, P.A., of Laconia (Judith E. Whitelaw and Walter L. Mitchell on the brief, and Ms. Whitelaw orally), for the defendant.


Law Office of Joshua L. Gordon, of Concord (Joshua L. Gordon on the brief), for New Hampshire Association of Broadcasters, as amicus curiae.


Devine, Millimet & Branch PA, of Manchester (Daniel E. Will on the brief), for Satellite Broadcasting & Communications Association, as amicus curiae.

BASSETT, J.  The plaintiff, DirecTV, Inc. (DirecTV), appeals the decision of the Superior Court (O'Neill, J.) denying a petition for property tax abatement for the tax years 2007, 2008, and 2009.  The property at issue is located in New Hampton and is used by DirecTV as a satellite uplink facility.  On appeal, DirecTV argues that the trial court erred when it (1) ruled that satellite antennas and batteries used to provide backup power constitute fixtures, and (2) determined the value of the property.  Because we conclude that the antennas and batteries are not fixtures — and, therefore, are not taxable as real estate — we reverse the decision of the trial court on that issue, vacate its decision on the valuation of the property, and remand for further proceedings consistent with this opinion.

The trial court found, or the record supports, the following facts. DirecTV is a national provider of satellite television service.  In 2005, it purchased the property at issue: an approximately 21 acre parcel, on which is built a 46,000 square-foot building.  Prior to the purchase, the building was used as a woolen mill facility, and contained a small office, an area for light manufacturing, a loading dock, and warehouse space.  DirecTV intended to use the property as a satellite uplink facility, from which it would transmit television content to its satellites.  The satellites, in turn, would transmit that content to customers' receivers.

In selecting the property as the site of its new facility, DirecTV was primarily motivated by the property's geographic location.  In order to transmit content to the satellites, which revolve in geosynchronous orbit around the earth, the uplink facility was required to be stationed somewhere within a designated geographical area in the Northeast.  The designated area included the New Hampton property, parts of other New England states, as well as upstate New York.  However, neither the land nor the building in New Hampton possessed any additional characteristics that were necessary for the operation of the uplink facility.  As Leon Stanger, an engineer and consultant for DirecTV, testified at the 2011 hearing, it is "relatively easy to adapt" a building to an uplink facility.

During the year following its purchase of the property, DirecTV made various improvements to the land and to the building.  In addition to using the property as an uplink facility, DirecTV uses the property for monitoring and operating the satellites, and for the storage of spare parts and equipment. Overall, as improved, about one-third of the building is used for DirecTV's satellite operations, while two-thirds is used as a warehouse.

Relevant for purposes of this appeal are two types of specialized equipment that DirecTV uses at the property: satellite antennas and batteries. Because the parties' dispute turns on the nature of these items, we discuss their characteristics and the circumstances surrounding their installation in more detail.

There are six antennas at issue in this case, three of which have 13-meter dishes, and three of which have 9-meter dishes. The 13-meter antennas are used to transmit television content to the satellites, while the 9-meter antennas are used in monitoring and operating the satellites. Each antenna consists of, among other components, a stanchion, a dish, internal tracking mechanisms and electronics, motors, conduit systems, and "de-icers."

To install these antennas, DirecTV poured concrete pads. The pads are three to four feet deep. Conduits for electrical wiring were placed in the concrete pads and run underground from the antennas to the facility. Trucks then transported the antennas to the property, where they were removed by crane, assembled, and bolted onto the pads. It took approximately one week to assemble each antenna structure, and several additional weeks to configure and install the wiring running between the antenna and the facility.

The process of disassembly is "straightforward": an antenna can be removed in approximately five days. Removal of the antennas would not affect the utility of the land or the building itself. DirecTV has moved satellite dishes between facilities in the past.

The antennas used by DirecTV cannot be readily utilized by other businesses, including DirecTV's primary competitor, DISH Network Corporation. Antennas are configured based upon each company's specifications, and must be placed in a specified location to transmit to the company's satellites. DirecTV's Federal Communications Commission license is limited to the New Hampton site and the particular frequencies that the antennas use. If DirecTV left the site, the license would terminate.

Turning to the batteries, they are used as part of the Uninterruptible Power Service (UPS) system, which provides emergency power "if the primary power drops out." Dozens of batteries are used in the backup system, and each battery is approximately the size of a car battery. During a power outage the batteries provide electricity to the facility until the backup generators start. This backup system is designed "strictly for the DirecTV equipment," and is necessary to ensure uninterrupted service to customers. The batteries sit on steel racks and are easily removable. If DirecTV ceased operations at the New Hampton facility, the batteries would be moved to, and used at, other DirecTV facilities.

In 2007, DirecTV filed a request for tax abatement with the defendant, the Town of New Hampton. After the Town denied the request, DirecTV filed a petition for tax abatement in the trial court. Subsequently, DirecTV amended its petition to include the 2008 and 2009 tax years. The case was bifurcated: the trial court first held hearings to determine whether DirecTV's equipment was taxable as real estate. The court ruled, among other things, that all six antennas, as well as the batteries, are taxable fixtures. The trial court then

proceeded to the valuation phase of the case, after which it ruled that DirecTV had failed to satisfy its burden to establish it had been taxed disproportionately.  This appeal followed.

On appeal, DirecTV argues that the trial court erred when it: (1) concluded that the antennas and batteries are fixtures under RSA 72:6 (2012); (2) failed to apply the tax exemption for emergency power sources to the batteries, pursuant to RSA 72:8 (2012); and (3) failed to "take into account" the evidence demonstrating that antennas are not taxed as real estate in New Hampton or other communities in New Hampshire, resulting in unconstitutional taxation, see N.H. CONST. pt. I, art. 12; N.H. CONST. pt. II, art. 5; N.H. CONST. pt. II, art. 6.  DirecTV also challenges the trial court's valuation of the property.  However, because we conclude that the trial court erred in ruling that the antennas and batteries are fixtures, we need not address DirecTV's arguments on the valuation issue.

We review a trial court's application of law to facts de novo.  Blagbrough Family Realty Trust v. A&T Forest Prods., 155 N.H. 29, 33 (2007).  We accord deference to the trial court's findings of fact, where those findings are supported by evidence in the record.  Id.

"As a general rule taxes cannot be assessed and collected in this State except by authority of the legislature."  King Ridge, Inc. v. Town of Sutton, 115 N.H. 294, 296 (1975).  RSA 72:6 provides, "All real estate, whether improved or unimproved, shall be taxed except as otherwise provided."  Accordingly, if the antennas and batteries are "real estate" as that term is used in RSA 72:6, then "they are taxable unless exempted by some other provision."  N.E. Tel. & Tel. Co. v. City of Franklin, 141 N.H. 449, 452 (1996) (quotation omitted).

For purposes of RSA 72:6, taxable real estate includes fixtures, which are items of personalty that have "los[t] [their] character as personalty" and have become "part of the realty."  Id. at 453.  This occurs when "there exists an actual or constructive annexation to the realty, with the intention of making it a permanent accession to the freehold, and an appropriation or adaptation to the use or purpose of that part of the realty with which it is connected."  Id. (emphasis and quotation omitted).  The inquiry is a mixed question of law and fact.  Id.

In New England Telephone, we explained that the question of whether an item "is properly classified as . . . personalty or a fixture" turns on several factors, including:

> the item's nature and use; the intent of the party making the annexation; the degree and extent to which the item is specially adapted to the realty; the degree and extent of the item's

annexation to the realty; and the relationship between the realty's owner and the person claiming the item.

Id. "The central factors are the nature of the article and its use, as connected with the use of the underlying land, because these factors provide the basis for ascertaining the intent of the party who affixes or annexes the item in question." Id. (quotation and citations omitted).

DirecTV argues that the trial court erred in two respects when it applied this multi-factor test. First, DirecTV contends that the trial court failed to properly apply the adaptation factor — that is, whether the item is "specially adapted to the realty." Id. The trial court applied the principle that an item is adapted to the realty if it is "essential to" the current use of the property. It concluded that the antennas and batteries are fixtures because they "are essential to the use of the building as an uplink facility." DirecTV argues that the trial court erred because the adaptation factor concerns whether an item is "necessary for the functioning of the building" or the land, not whether the item is essential "for the business operations taking place in [the] building," as the trial court determined. Second, DirecTV asserts that the trial court erroneously found that DirecTV intended to make the antennas and batteries "permanent accession[s] to the freehold." Id. We agree with DirecTV on both points.

A review of our case law establishes that, in evaluating whether personalty has been adapted to the realty, the proper focus of the inquiry is upon the relationship of the personalty to the realty itself — the buildings or land — rather than to the business enterprise carried on at the property. For example, in New England Telephone, we held that telecommunications equipment, including telephone poles and underground wires, as well as office equipment consisting of frames, switches, and power equipment, did not constitute fixtures. Id. In that case, the plaintiffs were three "public utilities providing telecommunications services in New Hampshire." Id. at 450. The poles and wires were installed on the property of third parties "in a manner that permits and facilitates their removal and relocation." Id. at 451. Similarly, the office equipment, "most of which [was] located in buildings owned by the plaintiffs," was "both portable and designed to permit removal and relocation." Id.

We affirmed the trial court's holding that these items were not fixtures, emphasizing that all of the plaintiffs' equipment could be removed "without affecting the utility of the underlying land, the buildings, or the equipment itself." Id. at 453. We further stated that the items would be "equally useful" elsewhere, and "would not render the land or buildings incomplete and unfit for use." Id. (quotations omitted). Although all of the equipment was integral to the plaintiffs' telecommunications operations, we noted that, if the plaintiffs were to move, "[t]he vacated building[s], though devoid of central office

5

equipment, [would] retain[] utility for other commercial or professional uses."
Id. at 451; see also Kaheawa Wind Power, LLC v. County of Maui, 347 P.3d
632, 641 (Haw. Ct. App. 2014) (recognizing the distinction between "the
business which is carried on in or upon the premises, and the premises"
(quotation omitted)).

In Appeal of Town of Pelham, 143 N.H. 536 (1999), we examined whether
eight trailers were fixtures. The taxpayer maintained a single family home on,
and conducted a fuel oil business from, the property. Appeal of Town of
Pelham, 143 N.H. at 537. The trailers were used for storage by the taxpayer.
Id. We affirmed the decision of the Board of Tax and Land Appeals ruling that
the trailers were not fixtures. See id. at 539-40. We noted that the trailers
were "readily removable and transportable without affecting the utility of the
underlying land, buildings, or the trailers," and that they "could be equally
useful and adapted for general use elsewhere." Id. at 539. Importantly, we did
not address whether the use of the trailers for storage was essential to either
the residential or the business activities occurring on the property. See id. at
539-40.

In Crown Paper Co. v. City of Berlin, 142 N.H. 563 (1997), we discussed
the circumstances under which factory machinery could be deemed to be a
fixture. There, the taxpayer sought an abatement of real estate taxes relating
to, among other things, "certain production equipment" used in the taxpayer's
pulp mill. See Crown Paper Co., 142 N.H. at 566. The pulp mill contained
"paper machines, bleachers, dryers, boilers and steam turbines, storage and
other tanks, a new chemical recovery unit, [and] computer control rooms." Id.
at 565-66.

We observed that, "[i]n rare circumstances," factory machinery may be
deemed a fixture if it "has a special use . . . independent of or unrelated to the
process of production, that [is] intimately intertwined with the underlying
realty." Id. at 569 (emphases added). This standard was derived from our
decision in King Ridge, Inc. v. Town of Sutton, 115 N.H. 294, 299 (1975), in
which we held that ski lifts installed at a ski area were taxable as realty under
RSA 72:6 because "[t]he exclusive use of the lifts [was] intimately intertwined"
with the specially designed use of the land. King Ridge, Inc., 115 N.H. at 299.
Thus, for factory machinery to satisfy this standard, "the trial court must
determine that some characteristic of the underlying realty makes a special or
other use of the factory machinery useful, and that the special or other use of
the factory machinery renders the underlying realty useful." Crown Paper Co.,
142 N.H. at 569 (emphases added). Although we have treated the "intimately
intertwined" standard as distinct from the multi-factor test described in New
England Telephone, see N.E. Tel. & Tel. Co., 141 N.H. at 452-55, our
discussion in Crown Paper Co. is nonetheless relevant because it explicitly
acknowledges that when determining whether the item is taxable under RSA
72:6, it is an item's relationship to the underlying realty that is considered, and

6

not the item's relationship to the taxpayer's business activities. See Crown Paper Co., 142 N.H. at 568-69; see also 8 R. Powell, Powell on Real Property § 57.05[5][b], at 57-44 n.75 (Michael Allan Wolf ed., 2012) (collecting cases for proposition that "[a]rticles specially adapted to the premises and not merely to the current business on the premises are most likely to become realty").

To be sure, as the Town argues, in the distant past, we sometimes stated a contrary view. See, e.g., Despatch Line of Packets v. Bellamy Man. Co., 12 N.H. 205, 232 (1841) ("Machines, and other articles essential to the occupation of a building, or to the business carried on in it . . . become part of it, and pass by a conveyance of the land." (emphasis added)); see also Automatic Sprinkler Corp. v. Marston, 94 N.H. 375, 376 (1947); Lathrop v. Blake, 23 N.H. 46, 63-64 (1851). However, our law pertaining to fixtures, like that of other jurisdictions, has evolved over the course of the last two centuries. See generally Powell, supra § 57.05[1]-[2][a], at 57-25 to 57-32 (discussing historical development of law on fixtures). As discussed above, we now examine a number of factors, the predominant consideration being the intention with which the annexation is made. See, e.g., N.E. Tel. & Tel. Co., 141 N.H. at 453; The Saver's Bank v. Anderson, 125 N.H. 193, 195 (1984); see also WO Co. v. Benjamin Franklin Corp., 562 F.2d 1339, 1345 (1st Cir. 1977). Regarding the factor of an item's adaptation to the realty, we do not focus solely upon the relationship between the item and the activities occurring on the property. Rather, we consider the relationship between the item and the realty itself, because that consideration "provide[s] the basis for ascertaining the intent of the party who affixes or annexes the item in question." N.E. Tel. & Tel. Co., 141 N.H. at 453; see also Powell, supra § 57.05[4][a], at 57-39 ("For the most part, the importance of the chattel to the use and enjoyment of the real estate is simply one more benchmark considered in arriving at the truly determinative test, the intent of the owner of the object.").

We now apply the New England Telephone test in this case. The evidence in the record is not materially distinguishable from the facts in New England Telephone. Like the equipment in that case, the antennas, although large and bolted in place, are "readily removable and transportable without affecting the utility of the underlying land, the buildings, or the equipment itself." N.E. Tel. & Tel. Co., 141 N.H. at 453. There are no peculiar characteristics of the land or the building that would render the antennas unfit for other commercial or professional uses if they were removed, and the antennas have equal utility if moved elsewhere. See id. If the antennas were removed, the only articles associated with the antennas that would remain on the land would be the concrete pads and the underground wiring, neither of which would detract from the fitness of the property for other uses.

Further, we agree with DirecTV that the trial court erred when it found that DirecTV intended to make the antennas permanent accessions to the freehold. See Crown Paper Co., 142 N.H. at 566 (stating that findings of fact

are "overturned only if unsupported by the evidence").  The only conclusion supported by the record is that DirecTV intended that the antennas remain its personal equipment.  The antennas were affixed at their current location in order to communicate with DirecTV's own satellites, and they cannot be readily utilized by other businesses.  DirecTV holds a license for the antennas that is specific to the frequencies DirecTV uses in its business.  There was also testimony that, if DirecTV were to terminate operations at the property, DirecTV would retain its equipment for use at other facilities or as spare parts.

The Town counters that there was evidence showing that DirecTV intended to keep the antennas affixed to the land "as long as the property is used as an uplink facility."  However, the question of whether DirecTV intended to use its equipment indefinitely while it conducted its business on the property is distinct — and qualitatively different — from the question here, which is whether DirecTV intended to make the antennas permanent parts of the realty.  See N.E. Tel. & Tel. Co., 141 N.H. at 453.  The nature and use of the antennas, as well as the nature of DirecTV's business and the industry in which it operates, demonstrate that DirecTV considered the antennas to be personal equipment rather than permanent parts of the realty.  See id. (stating that use of telephone poles and wires with integrated telecommunications systems "belies the proposition that the equipment became a . . . part of the underlying realty so as to pass by conveyance with it").  Accordingly, we conclude that the antennas are personalty, rather than fixtures.

We observe that our conclusion is in accord with the holdings of numerous other courts in cases involving similar equipment.  See, e.g., Motorola Communications and Electronics v. Dale, 665 F.2d 771, 772-74 (5th Cir. 1982) (under Mississippi law, 400-foot radio tower was personal property); In re Merrick, 151 B.R. 260, 261-62 (Bankr. D. Idaho 1993) (residential satellite dish affixed to concrete pad on land was not a fixture); Kaheawa Wind Power, LLC, 347 P.3d at 640-41 ("wind farm" turbines did not constitute fixtures).  Indeed, we note that there was evidence that other communities in New Hampshire do not regard commercial satellite antennas to be taxable realty.

The evidence in the record also demonstrates that the batteries are not fixtures.  The batteries are not affixed to the building; they are stored in steel racks and are easy to install and remove.  As with the antennas, removal of the batteries would not impair the function of the building, which would retain utility for other commercial or professional purposes.  The use of the batteries as part of the emergency power system is specific to DirecTV's particular business needs, and there was testimony that DirecTV would make use of the batteries at other facilities if it ceased operations at the property.  These facts demonstrate that the batteries were not intended to be "permanent and essential part[s] of the underlying realty."  N.E. Tel. & Tel. Co., 141 N.H. at 453.  In sum, we conclude that the antennas and batteries are personal property,

rather than taxable real estate, and we therefore reverse the trial court on the fixture issue.  Given this conclusion, we need not address DirecTV's constitutional claim, or its argument that, pursuant to RSA 72:8, the batteries are exempt from taxation as real estate.

Because the trial court's fixture analysis impacted its valuation of the property, we vacate the trial court's determination of value, and remand for further proceedings consistent with this opinion.  See In the Matter of Doherty and Doherty, 168 N.H. 694, 700 (2016).

Reversed in part; vacated in part; and remanded.

DALIANIS, C.J., and HICKS, CONBOY, and LYNN, JJ., concurred.