NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Merrimack
No. 2016-0668


PUBLIC SERVICE COMPANY OF NEW HAMPSHIRE

v.

TOWN OF BOW

Argued: October 12, 2017
Opinion Issued: January 11, 2018


Sulloway & Hollis, P.L.L.C., of Concord (Margaret H. Nelson and Derek D. Lick on the brief, and Ms. Nelson orally), for the plaintiff.


Wescott Law, PA, of Laconia (Paul T. Fitzgerald and Allison M. Ambrose on the brief, and Mr. Fitzgerald orally), for the defendant.


LYNN, J. The defendant, the Town of Bow (town), appeals an order of the Superior Court (McNamara, J.) granting the plaintiff, Public Service Company of New Hampshire (PSNH), an abatement of taxes on its property in the town for tax years 2012 and 2013. We affirm.

The trial court found, or the record supports, the following facts. PSNH owns certain special-purpose utility property in the town, including Merrimack Station, two combustion turbines, and a high-voltage regional electric transmission and distribution network.

Merrimack Station consists of two coal-fired units that produce steam to rotate turbines and generators to produce electricity. The two combustion turbines are located at the Merrimack Station site, and are, in essence, jet engines that were installed after the northeast blackout in the mid-1960s. They operate only in emergencies and are meant to enable power plants to start up quickly when they lose power. The combustion turbines cannot be remotely turned on and, instead, must be physically turned on in a control room at the Merrimack Station site.

The Merrimack Station site also contains a so-called "scrubber." The scrubber is designed to remove mercury from coal emissions. It was mandated by the New Hampshire Legislature in 2006 to be used in the operation of the Merrimack Station power plants. The scrubber was installed in 2010 and 2011, and went into service with final completion in 2012. The total cost of the scrubber was $422 million. The scrubber has been determined to be a tax-exempt treatment facility and, thus, the parties agree that Merrimack Station's total value must be reduced by the market value of the scrubber to arrive at the final taxable market value.

The transmission and distribution network consists of high-voltage transmission lines and a transmission substation at the Merrimack Station site as well as a distribution substation and associated equipment, poles, and wires. The transmission and distribution network conveys a high volume of power throughout the region and also serves a small subset of the town.

At trial, the sole issue was the determination of the proper value of this special-purpose utility property for the tax years in question. PSNH presented expert testimony from John P. Kelly of Concentric Energy Advisors regarding the value of the relevant property. The town presented expert testimony from George Sansoucy of George Sansoucy, P.E., LLC. Following a six-day bench trial, the trial court found Kelly's "testimony [to be] more credible than" Sansoucy's and, therefore, ruled that PSNH had met its burden of demonstrating that it was entitled to an abatement for tax years 2012 and 2013 with respect to the disputed property. The town moved for reconsideration, which the court denied, and this appeal followed.

On appeal, "[w]e sustain the findings and rulings of the trial court unless they are lacking in [evidentiary] support or tainted by error of law." Tennessee Gas Pipeline Co. v. Town of Hudson, 145 N.H. 598, 600 (2000) (quotation omitted).

On appeal, the town argues that the trial court erred by ruling "in favor of PSNH relative to its expert's valuation of Merrimack Station, the combustion turbines, and the transmission and distribution network within" the town. Specifically, with respect to Merrimack Station, the town contends that the trial court erred by failing "to consider the effect of the scrubber as evidence of the

substantial value of" Merrimack Station, including that PSNH "would recover its scrubber and operation expenses from ratepayers and continue to generate future cash flow." The town also maintains that the court erred by accepting Kelly's determination that the highest and best use of Merrimack Station was as a merchant-owned plant, rather than as a regulated utility-owned plant. It further argues that the court erred by crediting Kelly's "methodologies, which significantly understated revenues and overstated expenses" for Merrimack Station, and "resulted in negative cashflows for the Plant and reduced its indicated value." In addition, the town contends that the court erred by "misapprehend[ing] the purpose of the Plant and its benefits to ratepayers." It maintains that the court erroneously "failed to consider the value provided to PSNH ratepayers through the Plant's ability to mitigate the high costs of electric power at peak demand periods in the context of Merrimack Station's overall value."

The town further argues that the court erred by finding that the combustion turbines "had a near-zero value" and by failing to account for "a known cash flow stream that is separately" associated with the turbines. According to the town, the court misapprehended the purpose of the turbines and erred by finding that the turbines are "inefficient and, essentially, in poor condition because they are over 50 years old." The town maintains that, "[n]otwithstanding the age of [the turbines], they are in excellent condition" and will continue to generate income for PSNH "well into the future."

Finally, the town argues that the trial court erred by accepting Kelly's valuation of the transmission and distribution network because Kelly improperly relied upon "the net book value of the [transmission and distribution] network as a basis for his fair market valuation." The town contends that the court's "ruling in favor of PSNH's net book approach to appraising its [transmission and distribution] network is a substantial divergence from this Court's precedent which disfavors the use of net book value for market valuation of utility property."

"The search for fair market value is not an easy one, and is akin to a snipe hunt carried on at midnight on a moonless landscape." Appeal of Pennichuck Water Works, 160 N.H. 18, 37 (2010) (quotation and brackets omitted). The determination of fair market value is a question of fact. Id. It is extraordinarily difficult to value public utilities, and we give the trier of fact considerable deference in this area. Tennessee Gas Pipeline Co., 145 N.H. at 600.

> As we have repeatedly stated, the trier of fact may use any one or a combination of five appraisal techniques in valuing public utility property: original cost less depreciation (rate base or net book), comparable sales, cost of alternative facilities, capitalized earnings, and reproduction cost less depreciation. Typically all relevant

factors must be considered, but a trier of fact need not allocate specific weight to any one of the approaches listed.

Id. (quotation, brackets, and ellipsis omitted).

After considering the evidence, which included six days of testimony, voluminous exhibits, and a view of the property, the trial court issued a nineteen-page order explaining why it found Kelly's testimony to be more persuasive than Sansoucy's and thereby accepted his valuations of the disputed property. The town essentially faults the trial court because it found Kelly's valuations more credible than Sansoucy's. "Credibility, of course, is for the trial judge to determine as a matter of fact and if the findings could reasonably be made on all the evidence they must stand." Southern N.H. Water Co. v. Town of Hudson, 139 N.H. 139, 144 (1994) (quotation omitted). We find no reason to disturb the court's assessment.

Moreover, although Kelly's valuations differed from Sansoucy's, "conflicts in the evidence were to be resolved by the trial judge, who could accept or reject such portions of the evidence presented as he found proper, including that of the expert witnesses." Id. at 141 (quotation and brackets omitted). As the fact finder, it was proper for the trial court to weigh the conflicting expert testimony. See LLK Trust v. Town of Wolfeboro, 159 N.H. 734, 739-40 (2010). Because there is support in the record for the trial court's valuation determination, we cannot find that the court erred as a matter of law in accepting Kelly's appraisals.

To the extent that the town argues that we have previously rejected the net book value approach in valuation of utilities, we disagree. We have never held that a single valuation approach or specific combination of approaches is correct as a matter of law. Appeal of Pub. Serv. Co. of N.H., 170 N.H. 87, 97 (2017). To the contrary, the credibility of an appraisal is a question of fact that the trial court must decide based upon the evidence presented in a given case. Id. This is why the trier of fact is given considerable deference regarding determinations of fair market value and "need not allocate specific weight to any one of the approaches listed." Appeal of N.H. Elec. Coop., 170 N.H. 66, 76 (2017) (quotation omitted). The fact that we have upheld a trier of fact's rejection of the original cost less depreciation, i.e., net book, appraisal technique in a different case, based upon different appraisals, and supported by different testimony, has no bearing upon whether the trial court could properly rely upon that technique in valuing the transmission and distribution network in this case. See Appeal of Pub. Serv. Co. of N.H., 170 N.H. at 97. As we have stated, "judgment is the touchstone." Appeal of Pennichuck Water Works, 160 N.H. at 38 (quotation omitted). Such judgment was properly exercised here. The trial court's lengthy order reveals a careful and thorough consideration of each of the valuation methods, and its ultimate decision reflects this. See Southern N.H. Water Co., 139 N.H. at 141.

Accordingly, we cannot say that the trial court erred by granting PSNH an abatement of taxes on its property in the town for tax years 2012 and 2013.

<u>Affirmed</u>.

DALIANIS, C.J., and HICKS, BASSETT, and HANTZ MARCONI, JJ., concurred.